DIAMOND, respondent, *v.* NORTHERN PAC. R. CO., appellant.

RAILROAD COMPANY — *Damages for fire from locomotive sparks — Evidence.*— In actions for damages against a railroad company resulting from sparks of fire emitted or scattered by one of the defendant's engines, it is competent for plaintiff to show that about the time when the fire took place fire was scattered by an engine or engines of defendant, without predicating such engine to be the one which occasioned the fire in question.

SAME— *Definition of "ordinary care."*— In an action for damages

against a railroad company for a fire occasioned by sparks from one of its engines, it is misleading to charge the jury simply that the railroad company was bound to use the reasonable care and diligence of an ordinarily prudent man in preventing the escape of fire, and in keeping its right of way clear of combustible material, unless accompanied by an explanation that the care required is the ordinary care of an expert engineer or railroad servant.

SAME — *Combustible material on right of way — Laws of Montana of 1881, page 71, section 7.*— Under Laws of Montana of 1881, page 71, section 7, enacting that railroads running through the territory shall keep their right of way free from dead grass, weeds, or any dangerous or combustible material, it is as much the duty of a railroad company to so keep its right of way as it is to use proper means to prevent the emission of sparks of fire, and such law does not trench upon the chartered right, under act of congress, of such a railroad company.

SAME — *Negligence presumed.*— In actions against railroad companies for damages resulting from sparks of fire from a locomotive, negligence will be presumed from proof of the accident and the injury, and this applies to chartered as well as to other railroads.

*Appeal from First District, Custer County.*

ACTION by William Diamond, respondent, against the Northern Pacific Railroad Company, appellant, for damages for fire.

WILBUR F. SANDERS, for the appellant.

ANDREW F. BURLEIGH, for the respondent.

WADE, C. J.   In this action the respondent seeks to recover damages for the loss by fire of certain young trees, timber, buildings, fences, hay, and other property described in his complaint, which fire he alleges was occasioned by the negligence of the appellant in not keeping its track and right of way, which passes near to the premises of the respondent, free from dead grass, weeds, and other combustible materials, and in not providing suitable spark-arresters and other machinery in operating its road, and by negligence and carelessness of its officers in managing the same. There was a general verdict in favor of the respondent, and with it the jury returned certain special issues which had

been submitted, and which are as follows: "(1) How did the fire complained of by plaintiff originate? *Answer.* By fire from some train belonging to the defendant. (2) If you find that the fire came from the railroad, by what train was the same started? *A.* Said fire was started by a train which passed over the railroad of the defendant, adjacent to the property of the plaintiff, about the hour of 2 o'clock P. M. on August 11, A. D. 1882. (3) Did the fire originate from any fault or neglect on the part of the railroad company, and if so, in what did such negligence consist? *A.* Yes; by failing to keep its right of way free from dead grass. (4) Was there sufficient grass on defendant's right of way, or dry weeds or other combustible material, to make it apparent to a person of ordinary prudence that there was danger of fire therefrom in the neighborhood of plaintiff's ranch? *A.* There was. (5) Did the failure of plaintiff to remove dry grass or other combustible material on his own premises contribute in any degree to his loss? *A.* It did not."

There was no exception or objection to the testimony introduced before the jury, and upon which the foregoing findings and special issues were based, save the following: The witness Mrs. Earnest was asked the following question: "If you know, you may state whether or not you know of other fires occurring on the line of defendant's road in the vicinity of Mr. Diamond's ranch about the time, or within a week or two, of the fire in question, caused by sparks from defendant's locomotives,"—to which there was an objection by defendant, overruled, and an exception taken; and the witness answered as follows: "Yes, I saw sparks coming out of the smoke-stacks, and after the train passed I saw smoke. I saw hay burn once before the time of the fire at Diamond's ranch." And the following to another witness: "Do you know anything about the trains passing over that road about the 1st day of August?" to which there was an objection by defendant, overruled, and an exception; and the witness answered as follows: "I know of

trains passing over defendant's road about the 1st day of August, by which fire was scattered. This was not at the Diamond place, but this side and a mile or two from Diamond's. I know of three times that fires were set by passing trains — two on the hill and once this side of it."

As to the competency of this class of evidence, Mr. Thompson, in his valuable work on Negligence, says: "The business of running railroad trains suggests a unity of management and a general similarity in the construction of the engines. For this reason, and on account of the difficulty of proving negligence in these cases, as before pointed out, the admission of evidence as to other and distinct fires from the one alleged to have caused the injury is permitted. This rule is adopted in England, and prevails in all the states, with one or possibly two exceptions. More particularly, it may be stated as follows: That in actions for damages caused by the negligent escape of fire from locomotive engines, it is competent for the plaintiff to show that, about the time when the fire in question happened, the trains which the company were running past the location of the fire were so managed in respect to their furnaces as to be likely to set on fire objects in the position of the property burned, or to show the emission of sparks or ignited matter from other engines of the defendant passing the spot upon other occasions, either before or after the damages occurred, without showing that they were under the charge of the same driver or were of the same construction as the one occasioning the damage. . . . Evidence of this character is admitted for two purposes: *First*, to show the cause of the injury; *second*, to show negligence in the construction or working of the particular engine which caused the damage." Thomp. Neg. 159, and cases cited.

If, within a reasonable time before or after the fire in question, other fires had occurred in a similar manner, these would be circumstances tending, in some degree, to show either carelessness and negligence in the management of the engines, or that they were not properly constructed;

and such other fires would show a want of vigilance and care on the part of the company.

In the case of *Longabaugh* v. *Virginia, etc. R. Co.* 9 Nev. 271, the court say: "What are the facts in the case? Plaintiff's wood caught fire in some manner to him at the time unknown. How did the fire originate? This was the first question to be established in the line of proof. Positive testimony could not be found. The plaintiff was compelled, from the necessities of the case, to rely upon circumstantial evidence. What does he do? He first shows, as in the New York case, the improbabilities of the fire having originated in any other way except from coals dropping from the defendant's engines. He then shows the presence, in the wood-yard, of one of the engines of defendant within half an hour prior to the breaking out of the fire; then proves that fires have been set in the same wood-yard, within a few weeks prior to this time, from sparks emitted from defendant's locomotives. I think such testimony was clearly admissible, under the particular facts in this case, upon the weight of reason as well as of authorities. . . . Upon the question of negligence, it was admissible, as tending to prove that if the engines were, as claimed by defendants, properly constructed, and supplied with the best appliances in general use, they could not have been properly managed, else the fires would not have occurred." Proof of fires, covering a period of four years, was admitted in that case; and the following language, in the case of *Field* v. *New York, etc. R. Co.* 32 N. Y. 339, was cited and approved: "The more frequent these occurrences, and the longer time they have been apparent, the greater the negligence of the defendant; and such proof would disarm the defendant of the excuse that, on the particular occasion, the dropping of the fire was an unavoidable accident."

In the case of *Grand Trunk R'y Co.* v. *Richardson*, 91 U. S. 454, the supreme court of the United States holds the same doctrine. In that case the plaintiff was allowed to prove that, at various times during the whole summer, be-

fore the fire occurred, some of the defendant's locomotives scattered fire when going past the property destroyed, without showing that either of the locomotives which it is claimed caused the fire was among the number, and without showing that the former locomotives were similar in their make, state of repair or management to the latter ones. The court, by Mr. Justice Strong, said: "The question, therefore, is whether it tended in any degree to show that the burning of the bridge, and the consequent destruction of the plaintiff's property, was caused by any of the defendant's locomotives. The question has been often considered by the courts in this country and in England, and such evidence has, we think, been generally held admissible, as tending to prove the possibility, and consequent probability, that some locomotive caused the fire, and as tending to show a negligent habit of the officers and agents of the railroad company. There are, it is true, some cases that seem to assert the opposite rule. It is, of course, indirect evidence, if it be evidence at all. In this case it was proved that engines run by these defendants had crossed the bridge not long before it took fire. The particular engines were not identified, but their crossing, at least, raised some probability, in the absence of proof of any other known cause, that they caused the fire. And it seems to us that, under the circumstances, the probability was strengthened by the fact that some engines of the same defendants, at other times, during the same season, had scattered fire during their passage;" citing *Piggot* v. *Railroad Co.* 3 Man., G. & S. 229; *Sheldon* v. *Railroad Co.* 14 N. Y. 218; *Field* v. *Railroad Co.* 32 N. Y. 339; *Webb* v. *Railroad Co.* 49 N. Y. 420; *Cleveland* v. *Railroad Co.* 42 Vt. 449; *Railroad Co.* v. *McClelland*, 42 Ill. 358; *Smith* v. *Railroad Co.* L. R. 6 C. P. 22.

In Shearman & Redfield on Negligence, p. 491, it is said: "Evidence that sparks and burning coals were frequently dropped by engines passing on the same road, upon previous occasions, is relevant and competent to show habitual

negligence, and to make it probable that the plaintiff's injury proceeded from the same quarter."

In *Atchison, etc. R. Co.* v. *Stanford,* 12 Kan. 354, it is said: " The engines are all alike to him. He does not know them apart, nor does he know when any particular engine is used, or who manages it; and, when it passes at the rate of fifteen or twenty miles an hour, he could not see enough of it to afterwards identify it. What the engine is, and how it is managed, is peculiarly within the knowledge of the company." " The plaintiff is not, therefore, bound to prove which one of the defendant's engines set out the fire." *Bevier* v. *Delaware, etc. Co.* 13 Hun, 254.

These authorities, and others that might be cited, seem to settle the proposition that, in actions of this character, it is competent for the plaintiff to show the emission of sparks or ignited matter from other engines of the defendant, passing the spot upon other occasions, either before or after the damage occurred for which the action is brought, without showing they were under the charge of the same driver, or were of the same construction as the one occasioning the damage; and therefore that the testimony in question was competent and properly admitted. There were no other objections to the testimony given to the jury on the trial. The special findings of the jury are supported by the evidence. They have the force and effect of a verdict, and cannot be disturbed by an appellate court, if there is evidence to support them. They are conclusive upon us; and in the further consideration of the case, and of the rights of the parties thereto, we must consider the fact established that the damage of which the plaintiff complains, and which the jury found, was caused by fire from some train belonging to the defendant company; that said fire was started by a train that passed over the railroad adjacent to the property of the plaintiff, on the 11th day of August, 1882; that said fire originated from the negligence of the defendant in failing to keep its right of way free from dead grass; and that there was sufficient

dead grass, weeds and other combustible material on said right of way to make it apparent to a person of ordinary prudence that there was danger of fire therefrom, in the neighborhood of plaintiff's ranch. All of these facts were found by the jury upon testimony to which the defendant did not object, except to the two questions and answers above stated, and which objections, as we .have seen, were not well taken.

The statute of the territory prescribing the duty of railroads as to keeping their track and right of way free from dead grass, weeds or other dangerous or combustible material, is found in the Laws of 1881, p. 71, and is as follows:

"Sec. 7. It shall be the duty of all railroad corporations or railroad companies, operating any railroad in this territory, to keep their railroad track, on either side thereof, for a distance on each side of the track or road-bed so far as it passes through any portion of the territory of Montana, free from dead grass, weeds, or any dangerous or combustible material; and any railroad company or corporation so failing to keep their railroad track free and clear as above specified, and each side thereof, shall be liable for any damages which may occur from fire emanating from any operating railroad; and a neglect to comply with the provisions of this act, in keeping clear any railroad track, and either side, for a distance equal to the space of ground covered by the grant of the right of way for the railroad company, provided that the same does not exceed one hundred feet on each side of the road-bed, shall be *prima facie* evidence of negligence on the part of any railroad corporation so operating any railroad within the territory of Montana."

The jury found, as fact, that the fire in question came from one of the defendant's trains, and was caused by the neglect of the defendant in failing to keep its right of way free from dead grass, and that there was sufficient thereof, on said right of way, in the vicinity of defendant's ranch, to make it apparent to a person of ordinary prudence that

there was danger of fire therefrom. Such neglect, under the statute, made a *prima facie* case of negligence against the company. When such a case is made against a defendant, he is called upon to rebut the presumptions and conclusions therefrom arising. Under this statute, proof of the fire, and the failure of the company to keep its right of way free from the combustible materials therein named, in the vicinity thereof, makes a *prima facie* case against the company, and the burden then is upon it to show that it was not at fault.

In the management and operation of its road, it was as much the duty of the company to keep its track and right of way free and clear of dead grass, weeds or other combustible material, and the care in this regard should be just as great, as in providing suitable machinery, equipments, and officers and employees for its road. Negligence in this respect would render it liable, even though its appliances were proper, and though it were guilty of no negligence in allowing the fire to escape. Says Mr. Thompson: "A railroad company is bound to keep its track and contiguous land clear of materials likely to be ignited from sparks issuing from its locomotives, and neglect of these precautions will render it liable, even though its appliances were proper, and though it were guilty of no negligence in allowing the fire to escape. This is a duty which is implied in the grants to corporations to use locomotive engines. A franchise of this nature must be strictly construed; and it would be unreasonable to presume that, in granting the privilege to use this dangerous agent, the legislature intended to give them the privilege of running their engines on premises surrounded and covered with combustible materials. The removal of such combustible substances is quite as much a means of preventing the communication of fire from their locomotives as the use of inventions for preventing the escape of fire from the locomotives themselves." Thomp. Neg. 162; *Salmon* v. *Delaware R. Co.* 38 N. J. Law, 5; *Delaware, etc. R. Co,* v. *Salmon,* 39 N. J. Law, 299;

*Kellogg* v. *Chicago, etc. R. Co.* 26 Wis. 223; *Toledo, etc. R. Co.* v. *Wand,* 48 Ind. 476; *Burlington, etc. R. Co.* v. *Westover,* 4 Neb. 268; *Henry* v. *Southern, etc. R. Co.* 50 Cal. 176; *Pittsburgh, etc. R. Co.* v. *Nelson,* 51 Ind. 150.

Nor is the ignition of combustible material on the track or right of way of a railroad, by sparks dropped from passing trains, unavoidable accident. The removal of the combustible material from the road or right of way is an obvious and sure precaution. *Flynn* v. *San Francisco & S. J. R. Co.* 40 Cal. 19.

The defendant derives its authority from an act of congress. It is the owner of a chartered right, and this right cannot be abridged or invaded by territorial legislation. But the grant of a franchise or privilege to use a dangerous agent carries with it the corresponding duty to so use and exercise the same as not to infringe upon the rights of others. The more dangerous the agent, the higher the degree of care required. Section 7 of our statute, above quoted, imposes no greater burdens than are imposed by the grant to the defendant. The duty goes with the privilege.

The findings of fact having been made upon unobjectionable testimony, as we have seen, such findings are conclusive upon us, and of the case, providing there were no errors of law in the instructions given to the jury, by which their verdict was influenced. The theory of the defendant, as shown in its requests to charge, is that railroad companies are only bound to exercise a reasonable care and diligence to prevent fire and sparks from escaping from their locomotives while running on their roads, and in keeping their tracks free and clear from combustible material; and that reasonable care and diligence is such as an ordinarily prudent man would, under like circumstances, observe to prevent injury to his own property, if equally exposed. This theory entirely loses sight of the requirement that the "ordinarily prudent man" of which it speaks must be skilled in the particular business; and, according to that theory, an engineer would fill all the requirements

if he was a man of ordinary prudence, but entirely ignorant of mathematics and engineering. But if the theory as stated were correct, it would, without explanation, be misleading. The expression "ordinarily prudent man," or "ordinary care," without qualification, suggests merely the care that should be bestowed in cases of "ordinary" danger. They are expressions inappropriate, where the danger is extraordinary, unless they are explained and applied to the subject. If the danger is great, the care should be great in proportion. The ordinary care of an engineer on a railroad locomotive is a very high degree of care, and the skill required is a very high degree of skill. Such an engineer is the "ordinarily prudent man" of his class, and the phrase, thus explained, would be correct.

The use of locomotive engines, even when carefully managed, is known to be dangerous; and this fact alone devolves upon those using them as a motive power a high degree of care. But this term is relative; and ordinary and reasonable care — which is, after all, the most that the law requires — means, when used in this connection, that degree of care which prudent men, *skilled in the particular business*, would be likely to exercise under the circumstances. The care must be proportionate to the danger. What is ordinary care in a case of extraordinary danger would be extraordinary care in a case of ordinary danger, and what would be ordinary care in a case of little danger would be much below this in case of great danger. Thomp. Neg. 152, and cases cited.

Says Wharton: "It is enough for us to fall back upon the essential principle that lies at the base of this branch of the law, that the diligence to be exacted from a specialist is the diligence which good specialists in his department are accustomed to bestow." Neg. § 872. Shearman & Redfield on Negligence, section 477, says: "It is the duty of a railroad company to take such precautions against danger as the magnitude of the peril demands. The ordinary care to be used in the management of a railroad may, therefore,

and sometimes does, require the precautions which, if used in any business involving less risk, would be deemed equivalent to the utmost care." And, while it would be error to charge a jury that the utmost care is required, still the use of the phrase "ordinary care," with no explanation or application of its meaning, would tend to mislead the jury. It is a phrase applied to a variety of situations, and imposes duties and obligations accordingly. It means one thing as to one case, and a different thing as to another, and in every case the jury ought to be told what degree of care is required. It might be a very high or a very low degree, and this in every case would depend upon the danger. A man must exercise "ordinary care" in conducting a dray through the streets, and also in conducting a train on a railroad, but the degrees of care thus required would be wide apart. Each would be a specialist in his own department, and each would be required to bestow the care and skill that the danger required.

There was no testimony in the case tending to show that the defendant used ordinary or any care whatever in keeping its track and right of way free from dead grass and weeds, while the jury found as a fact that there was sufficient of such combustible material on said right of way to make it apparent to a person of ordinary prudence that there was danger of fire therefrom in the neighborhood of plaintiff's ranch, and that, by the neglect of the defendant in failing to clear away said material, the fire occurred. If there was neglect in this regard, whereby the fire occurred and the damage was done, it was not very material how perfect and complete the road was equipped in other respects, or how faithful and efficient were its officers.

The defendant also requested the court to instruct the jury as follows: "You cannot presume negligence by reason of the fact (if it is a fact) that the fire complained of by plaintiff occurred and had its origin from one of the defendant's locomotives, but you must further find, from the testimony, a want of ordinary care, as I have defined it, on

the part of the defendant, in one or more of the matters mentioned in the complaint." But the court refused this request, and on this subject charged as follows: "If it has been proven to your satisfaction that the fire was caused by sparks of fire emitted from an engine of the defendant, that fact is *prima facie* evidence of negligence on the part of the defendant, and such proof as to the fire, and of the consequent injury, entitles the plaintiff to recover damages for the losses caused thereby, if nothing more be shown on either side; and therefore throws the burden of proof on the defendant to show, by way of rebuttal, that at the time of the alleged injury the engine was equipped with the necessary and most effective appliances to prevent the escape of fire, and was not only in good repair, but was properly, carefully and skilfully handled by a competent engineer."

The gist of this action is negligence, and ordinarily in such cases the burden of proving negligence is upon the party who alleges it. The doctrine is now undisputed both in England and in America, "that when the legislature has sanctioned and authorized the use of a particular thing, and it is used for the purpose for which it was authorized, and every reasonable precaution is observed to prevent injury, the sanction of the legislature carries with it this consequence: that if damages result from the use of such thing, the party using it is not responsible. Therefore, in the case of railroads authorized to propel their cars by steam, the gist of their liability for injuries caused by the escape of fire is negligence. This is now the law of England, and of every state in the Union except where altered by statute." Thomp. Neg. 152, and authorities cited in note.

But there are cases where negligence will be presumed from proof of the accident, and the injury and fires caused by steam-engines seem to come within this class. This is a presumption arising from necessity and that justice may not be defeated. Fire escapes from an engine and destroys property. The owner only knows that his property is gone,

and that the fire causing its destruction came from the engine. He might not know or be able to prove from what particular engine on the line of a railroad the fire escaped, or who at the time was in charge of it, or whether it was properly constructed, and so not be able to prove negligence, when, in fact, it did exist. All this proof is in possession of the railroad company, and it has the power of rebutting the charge of negligence, if none in fact existed. "The rule, in cases of ordinary fire, that the destruction of property by this means does not of itself raise a presumption of negligence, finds an exception in the case of fires caused by steam-engines. All information as to the construction and working of engines, and of the particular one in fault, is in the possession of the company, as are also the means of rebutting the charge of negligence entirely in its power. An outsider can hardly be expected to prove that, in the construction of the engine, or in the use of it at the time the injury occurred, the company was guilty of negligence. He can only prove that his property was destroyed by one of the company's locomotives; and having done this, it is but proper to call on the defendant to show that he was not negligent; that he employed careful and competent servants, and that he had used the most improved appliances to prevent the escape of fire from his engines. These considerations have induced the courts of England, of Missouri, of Illinois, Tennessee, Wisconsin, Nebraska, Nevada and perhaps Minnesota to adopt the presumption of negligence from proof of the escape of fire from a locomotive. On the other hand, in Connecticut, Indiana, New York, Kansas, Pennsylvania, California, North Carolina, Delaware, Iowa and Ohio some additional evidence of negligence is required of the plaintiff." Thomp. Neg. 153 and authorities cited.

The situation of the plaintiffs in such cases might, and very likely would, render it impossible for them to furnish any additional proof, and thereby the defendants might escape the payment of damages that their negligence had caused. It is no hardship on railroad companies to prove

that they have not been negligent, if such is the fact. They have all the proof in their possession. It is no injustice to them to be required to show how their engines are equipped, and the care and skill bestowed by their officers and employees, while it would be a hardship and an injustice for the person whose property has been destroyed, in his absence perhaps, by fire from an engine, to show any of these things. The presumption of negligence against defendants and in favor of plaintiffs in such cases seems to be a presumption arising from the necessities of the situation, and that justice may not fail.

Judge Cooley, commenting on this subject, says: " Often the injury itself affords sufficient *prima facie* evidence of negligence. Thus, if the buildings of individuals are destroyed by fire originating in sparks from a locomotive, the fire itself is held to be evidence of negligence, which requires to be overcome by some showing that the railway company provides suitable precautions against such an occurrence. Every lawful business is supposed capable of being carried on in a manner that will be consistent with safety to the business and property of others. All police rules, whether constituting a part of the common law or imposed by statutes, must assume that this is practicable. The construction of railroads could not be permitted if their trains must necessarily run across the country, scattering fire and destruction along their way. But experience shows that this may be avoided by the exercise of reasonable care. Reasonable care in such a case is unquestionably a high degree of care, because the risk of injury where care is not observed is very great, not to one person merely, but to whole communities of persons all along the line of the road. There is consequently nothing unreasonable in presuming negligence from the occurrence of an injury, and calling on the railroad authorities to rebut the *prima facie* case, by showing that they take reasonable care in the selection and management of their machines to prevent such injury occurring." Cooley, Torts, 661.

Prof. Wharton, who takes the opposite view, and declares that when a company is chartered and thereby lawfully uses fire in its engines, the true doctrine is that it rests on a plaintiff, suing it for fire communicated from its engines, to show negligence in the company, also says that it is a mistake to suppose that negligence can be only proved by positive affirmative evidence, and that it is not necessary for the plaintiff to do more than show such circumstances as from the nature of things lead to the inference of negligence as the most probable hypothesis by which the injury can be explained. Whart. Neg. §§ 870, 871.

The fact that a company is chartered and has the lawful right to use fire in its engines does not give it the right to injure the property of others. It accepts its charter with the implied understanding that it will so use the right or franchise conferred as not to infringe upon the rights of others. The property of one man cannot be imperiled by giving a charter to another. Men do not own their property subject to any such right unless it is lawfully taken upon just compensation and condemned to a public use. All the authorities agree, in the case of an unchartered company, if the plaintiff shows that his property caught fire from the defendant's engine, the burden is on the defendant to disprove negligence, and there is no reason for applying a different rule to a chartered company. Each alike owns its property, and each is required to so use its own as not to injure the property of others. This is implied whenever a charter is granted. It is a part of the contract, and if it were not, the granting of a charter would be the imposing of burdens upon the private property of individuals — the condemning of such property without just compensation. Any man or company of men may purchase the right of way and construct and operate a railroad. It is a lawful business. Another company may procure a charter and do the same thing; and in case of damage and injury to adjacent property by fire from the engines of either company, there ought not to be any difference in the rule of evidence

or in the burden of proof when a plaintiff comes to sue for such damage.

The statute of the territory requiring railroad companies to keep their track and right of way free from dried grass, weeds or other combustible material, should receive a reasonable construction. It is a matter of common observation that generally, in Montana, the right of way of railroads has upon it more or less dried grass and weeds; but if the quantity is not sufficient to indicate danger from fire to common prudence and ordinary care, then no liability could arise therefrom. The instructions as given cover this proposition.

There is no complaint that the instructions as given are contradictory or inconsistent, and we find no error in those given or in failing to give those refused.

Judgment affirmed, with costs.

GALBRAITH, J., and McLEARY, J., concur.