## KELLEY, appellant, *v.* CABLE COMPANY, respondent.

*Responsibility of mining company for negligence of foreman.* — In an action for damages, brought by one of its employees against a mining company, for personal injuries sustained from an explosion in a mine while in the discharge of his duty, if such injuries were the result of negligence on the part of the foreman in charge, in his capacity as such foreman, the company could not escape liability on the theory that the foreman was a fellow-servant of the injured employee, and any such negligence of the foreman would be that of the company he represented.

*Failure to fully instruct a jury is no ground of complaint for a party who offers and is granted defective instructions.* — A party cannot complain of the fact that a charge of the court is insufficient in definition or explanation of terms contained therein, when the same was given at his request. If he desired a correct definition of the terms referred to in such charge, he should have asked an instruction setting out such definition.

*Degree of care and diligence required of employers.* — The modification of an instruction asked by the plaintiff so as to limit the employer's duty to "ordinary care and diligence" instead of "proper care and diligence," as recited in the instruction, was no error on the part of the court.

*Instructions given on different theories are erroneous.* — Conflicting instructions are always good ground for a reversal, where they may have misled a jury. The instructions asked by the opposing parties must be harmonized or else disregarded. The instructions given at the request of plaintiff in the case at bar were upon the theory of negligence on the part of defendant through acts of its foreman and other agents; those given at the request of the defendant excluded the idea of its liability for negligence of any other agent than its foreman. This was error. Defendant was entitled to charges of that character if the evidence warranted it, but the instructions granted at the request of the plaintiff should have been modified accordingly.

*Employer's responsibility for negligence of fellow-servant to fellow-servant.* — The employment of skillful, prudent, and sober men discharges the master from responsibility for injuries caused by their neglect to a fellow-servant, but the master does not have the right, after employing such men, to impose upon them his own duties, and, without supervising them in any way, to impute to their negligence any injuries his other servants may sustain, and thus escape responsibility. An instruction from which a contrary doctrine might reasonably be inferred is erroneous.

*Instructions not to be given unless evidence warrants them.* — When it is admitted in an instruction given at the request of the plaintiff that there was no contributory negligence on his part, an instruction given to the defendant, which presents as a defense such contributory negligence, is error.

*When it is the duty of the master to notify the servant of danger.* — If the defendant or its foreman knew, or by the use of reasonable diligence might have known, of the existence of the danger from the unexploded blast which injured plaintiff, it was a bounden duty on its part, or on the part of its foreman, to have informed plaintiff of the same.

*Right of a servant to rely upon a master's having done his duty.* — In the case at bar, the plaintiff, in going to work in the vicinity of the unexploded blast, had a right to presume, and act upon the presumption, that the defendant had done its duty in reference to the ascertainment of any danger therefrom.

*Appeal from District Court, Deer Lodge County.*

F. W. COLE and WILLIAM SCALLON, for the appellant.

A corporation can act only through agents; and (save that of a mere servant to a co-servant) is liable for their negligence, whatever may be the grade of their employment. It is a master's duty to ascertain the existence of concealed danger, and to warn a servant who is ignorant of it. A servant does not assume the risk of such danger. A master's failure to provide proper rules for the protection of servants against concealed danger is a neglect of duty. The defendant is liable for the negligence of its superior employee to an inferior employee. Defendant's instructions are erroneous, because they are founded on different and conflicting theories. Sherman and Redfield on Negligence, 93, and notes; Cooley on Torts, 540, 544, 553, 555; Thompson on Negligence, 970, 975, 982, 984, 994; 25 Fed. Rep. 261, note, and cases there cited; *Hough* v. *Railroad Co.*, 100 U. S. 213, and cases cited; *Railroad Co.* v. *Ross*, 112 U. S. 377, and cases cited; *Herbert* v. *N. P. R. R. Co.*, 116 U. S. 641, and cases cited; *Flike* v. *Railroad Co.*, 53 N. Y. 549; S. C., 13 Am. Rep. 545; *Fuller* v. *Jewett*, 80 N. Y. 46; S. C., 36 Am. Rep. 575; *Abel* v. *Delaware Canal Co.*, 103 N. Y. 581; S. C., Am. Rep. 773; *Little Miami R. Co.* v. *Stevens*, 24 Ohio 415; *Railroad Co.* v. *Keary*, 31 Ohio St. 201; *Kelley* v. *Belcher Co.*, first opinion, 3 Saw. 437, on p. 443; *Trihey* v. *Brooklyn Lead M. Co.*, 12 Pac. Rep. 612; *Mason* v. *Edison Mach. Works*, 28 Fed. Rep. 228; 77 Am. Dec. 222, note; *Beeson* v. *Green Mt. G. M. Co.*, 57 Cal. 20.

The defendant claims that it was no part of the foreman's duty in mines generally, or in the Cable mine, to

make inquiries as to concealed danger, and give warnings. If that were true, then such an omission to make proper regulations in that respect would be negligence in *se*. See authorities above cited. The charge to the jury fails to define or explain what is ordinary or reasonable care, or the want of it. *Diamond* v. *N. P. R. R. Co.*, 6 Mont. 580.

HIRAM KNOWLES and W. W. DIXON, for the respondent.

Appellants assume in this case that the master was bound to know of the missed charge, while the rule is that if he should have exercised any care at all in reference thereto, only reasonable care, or in other words, ordinary care, was required. Wood on Master and Servant, 680, 688, 689, and note 2; *The Nitro-glycerine Case*, 15 Wall. 524; *Murray* v. *S. C. R. R. Co.*, 36 Am. Dec. 284; 2 Thompson on Negligence, 971, 972, 982; Shearman and Redfield on Negligence, secs. 92–94; *Hough* v. *Railway Co.*, 100 U. S. 213, 218.

A master is not bound to adopt the latest improvements in blasting. Wood on Master and Servant, secs. 331–333; 2 Thompson on Negligence, 983.

The burden was upon the plaintiff to show negligence or want of due care on the part of defendant. Wood on Master and Servant, sec. 382; Thompson on Negligence, p. 1053. No presumption would arise, from the injury of the plaintiff by the discharge of the missed charge, that defendant was guilty of negligence. Wood on Master and Servant, sec. 368; *Transportation Co.* v. *Downer*, 11 Wall. 129. The men engaged in blasting in the mine were plaintiff's fellow-servants. *Kelley* v. *Belcher Silver Mining Co.*, 3 Saw. 500; 2 Thompson on Negligence, 1026, 1034, 1035; *Murray* v. *S. C. R. R. Co.*, 36 Am. Dec. 287, note. And no negligence they were guilty of could be imputed to defendant. *Murray* v. *S. C. R. R.*

Co., 36 Am. Dec. 283; Wood on Master and Servant, p. 795, sec. 416; 2 Thompson on Negligence, 924. Negligence on the part of the servant raises no presumption of negligence on the part of the master. Wood on Master and Servant, p. 803, secs. 420, 423; Shearman and Redfield on Negligence, p. 109, sec. 86; 2 Thompson on Negligence, 984. When a foreman undertakes to perform the duties of a fellow-servant, the master is not liable for his negligence. Wood on Master and Servant, pp. 887, 888, sec. 451, and p. 856, sec. 437. Plaintiff understood the character of the employment and the risks incident thereto, and therefore undertook such risks. Wood on Master and Servant, p. 678, sec. 326, and p. 686, sec. 328. *Railroad Co.* v. *Ross*, 112 U. S. 377, cited by appellant, states that the employee takes upon himself the ordinary risks incident to the business and the risk of negligence of his fellow-servants (p. 387); and to same effect are *Hough* v. *Railway Co.*, 100 U. S. 213; *N. P. R. R. Co.* v. *Herbert*, 116 U. S. 642 (both cited by appellant). See also *Armour* v. *Hahn*, 111 U. S. 313; *Randall* v. *B. & O. R. R. Co.*, 109 U.S. 478; *Crepin* v. *Babbitt*, 81 N. Y. 516; and *Newbauer* v. *Railroad Co.*, 101 N. Y. 607.

McLEARY, J. The plaintiff, William Kelley, brought this action against the defendant, the Cable Company, to recover damages in the sum of thirty thousand dollars for personal injuries sustained by him while working as a carman in the defendant's mine. There was a trial by jury, and a verdict for the defendant; and after motion for a new trial overruled, the plaintiff appeals to this court from the judgment, and from the order overruling the motion for a new trial. The following facts were admitted by the defendant, as appears from the record herein, to wit: That, at the time stated in the complaint, the defendant was a corporation duly incorporated, and that it was working and managing the mining of the

Cable mine, in Deer Lodge County, Montana; that on or about the nineteenth day of July, 1884, the plaintiff was employed by defendant, and in its service in said mine, as a common laborer, removing ores, rock, and dirt, filling the cars with the same, and running such cars, and that the plaintiff was then and there at work in said mine; and that the plaintiff, at the said time, was ordered by the defendant's foreman, then and there in charge of said mine, and under whose direction and control the plaintiff was bound to work, to go to work in a certain cross-cut in said mine at the work aforesaid; and that the plaintiff, in obedience to such orders, went to work as ordered to do, and while at work therein, that he was injured by an explosion; and that said explosion occurred, and plaintiff was injured, without any fault on his part; and that, previous to the explosion, the plaintiff did not know, and had no means of knowing, whether or not there were at said place charges not shot off, and could not have discovered the fact except by being informed thereof.

It appears from the evidence found in the record that it was the plaintiff's duty to shovel and load into the cars, within the mine, the rock and *debris* blasted by the miners, and to transport the same to the mill and the dump; and further, that the plaintiff worked on the night shift, and the miners who did the blasting worked on the day shift,—the plaintiff and others being required to remove, during the night, the ores, etc., which the miners had broken down and blasted during the day; and further, that while the plaintiff was at work during the night of the 19th of July, 1884, an explosion occurred in the cross-cut where he was working, which resulted in the plaintiff's receiving very severe injuries, both of his eyes being blown out, and one ear being blown off, his head, face, neck, and chest lacerated, thereby entirely destroying his sight, and the hearing of

one ear, causing him great and excruciating pain, and confining him to the hospital for several months, and rendering him forever incapable of working at his occupation. The record further discloses the following: That the plaintiff, under orders, went to work at seven o'clock, P. M., one hour after the miners on the day shift had quit work. The blast had been fired at about five o'clock in the afternoon. In accordance with directions, the plaintiff was working at the cross-cut, where he had been working the night before; and during the night, between eleven and two o'clock, while he was loosening rock and *debris* with his pick, the explosion took place, and he was hurled for eight or ten feet against a car, and was rendered senseless for some time, and injured as already stated. No warning had been given the plaintiff of any danger existing in the place where he was sent to work, from a "missed charge," or otherwise. On previous occasions he had been warned by the foreman to look out for "missed charges." The foreman, under instructions from the superintendent, had always made it his business to examine, in order to ascertain whether or not all the charges in the blasts had been fired, and when any had missed, had been particularly careful to warn the plaintiff and others to look out for these missed charges.

It is a disputed question whether the explosion was caused by a charge of powder left in a hole unexploded, or by a piece of loose powder which had been accidentally dropped or otherwise misplaced among the rocks and *debris*. In one view of the evidence, it is possible that the jury may have regarded these injuries as the result of an unavoidable accident, arising from causes over which the defendant had no control, or from dangers which the defendant did not know of, and by the use of reasonable diligence could not have ascertained; and for that reason we do not feel disposed to say that

this verdict was contrary to the evidence, or to disturb the judgment on that ground. On this question we are not required to express an opinion.

The admissions of the defendant entirely eliminate all questions of contributory negligence from this case. The defense is based on the theory that the explosion was an unavoidable accident, which could not have been foreseen or prevented by the exercise of ordinary care and prudence on the part of the Cable Company, or else was the result of the negligence of some one of the miners, fellow-servants of the plaintiff, or of the foreman while acting in the capacity of a miner and fellow-servant of the plaintiff. The evidence does not bear out the defense that the explosion was caused by the negligence of a fellow-servant. If it was caused by negligence at all, it was the negligence of the foreman, in his capacity as such, and was thus the negligence of the company whom he represented.

We are not called upon to review the instructions given by the court at the request of the plaintiff. If any one of them is erroneous, the appellant is not in a position to complain. But on a casual examination, as modified by the court and given, they seem to embody the law of the case, and appear to have been correctly given.

Nor can the appellant complain of the fact that "the charge of the court nowhere defines or explains what is ordinary care and reasonable care or diligence, or the want of it." The only charge given on the subject was asked by the appellant, and he cannot complain of its insufficiency; but if he desired a correct definition given of the terms referred to, he should have requested an instruction setting out such a definition.

It was not error in the court to modify instruction No. 16, asked by the plaintiff, so as to limit defendant's duty to "ordinary care and diligence," instead of "proper care and diligence," as stated in the instruction. It is true

that the court might well have instructed the jury more fully in regard to ordinary care and diligence, and doubtless would have done so had it been so requested. We believe what was said by this court in a case decided at the last term is applicable to the facts of this case, and it may be quoted in this connection. Mr. Chief Justice Wade, in delivering the opinion of this court, in speaking of "ordinary care," uses the following language: "But this term is relative; and ordinary and reasonable care, which is after all the most that the law requires, means, when used in this connection, that degree of care which prudent men, *skilled in the particular business*, would be likely to exercise under the circumstances. The care must be proportionate to the danger. What is ordinary care in a case of extraordinary danger would be extraordinary care in a case of ordinary danger, and what would be ordinary care in a case of little danger would be much below this in case of great danger." *Diamond* v. *Northern Pac. R. Co.*, 6 Mont. 590.

The principal question presented by this appeal is, whether the court erred in giving to the jury the instructions asked by the defendant, to which the plaintiff excepted. The instructions generally asked by the defendant, and given, are in many particulars contradictory to those given at the request of the plaintiff, and in this particular are erroneous. Conflicting instructions must nearly always mislead the jury, and are always good ground for reversal, where they have done so. The instructions asked by the different parties to an action generally proceed upon entirely different theories of the law applicable to the case, and they should be so modified and harmonized as to present the law in its proper light, or altogether disregarded, and the case given to the jury on the general charge of the court alone.

The plaintiff, in his complaint, charges the defendant on account of negligence alleged to have been committed

through the acts of the foreman and other agents, and the instructions given at his request proceed upon that theory; but the instructions given at the request of the defendant exclude altogether the idea of the defendant's liability for the negligence of any other agent than the foreman himself. The instructions asked by the plaintiff virtually exclude the defense of the negligence of a fellow-servant from the consideration of the jury; and this view of the matter at issue seems to be borne out by the evidence. Still, the instructions asked by the defendant, and given, repeatedly present the acts of a fellow-servant as a perfect defense to plaintiff's case. Of course, if the evidence warranted it, the defendant should have been given the benefit of charges of this character; but then the plaintiff's instructions should have been modified accordingly.

The twelfth instruction asked by the defendant reads as follows, to wit: "If the defendant in this case employed, as fellow-servants with the plaintiff, men of usual prudence and competency in their business (and in the absence of proof to the contrary it is presumed that the men defendant employed were such men), then defendant was not liable to plaintiff for the negligence of such fellow-servants; and the law did not require that defendant or its foreman should personally supervise such men, or see that everything they did was carefully or properly done; but defendant had a right to rely upon the expectation that such men would discharge their duties with proper care and prudence, in a skillful manner." Even if the evidence warranted the defense of the negligence being that of a fellow-servant being submitted to the jury, this instruction stops short of what should have been given to the jury in that connection. The employing of skillful, prudent, and sober men discharges the master from any responsibility for injuries caused by their neglect to their fellow-servant; but the master does

not have the right, after employing such men, to impose upon them his own duties, and without supervising them in any way, impute to their negligence any injuries his other servants may sustain, and thus escape responsibility. But such might reasonably be inferred from the charge. It seems that this instruction might readily have misled the jury to the prejudice of the appellant.

Instruction No. 10, given at the request of the defendant, presents as a defense the contributory negligence of the plaintiff. As we understand this case, it was admitted by the defendant that the plaintiff was injured without any fault or negligence on his part. At least it is so stated in the eighth instruction asked by the plaintiff, and given; and even if it were not so admitted, these two charges could not stand together, as they are contradictory; and to give them both was certainly erroneous.

The fourteenth instruction, given at the request of the defendant, reads as follows: " If the jury find from the evidence that it was the duty of those who were engaged in blasting in the defendant's mine, and that it is usually the duty of those engaged as laborers in blasting in mines, to determine whether the blasts put in by them have exploded, and that none of them have missed, then, if the foreman undertook to perform this duty, he was a fellow-servant of the plaintiff as to this matter, in determining whether these blasts had exploded, and none of them had missed, and the defendant was not responsible for any negligence he may have been guilty of in this matter." This instruction is not warranted by the evidence, even if it stated the law correctly. Both Savery, the superintendent, and Showers, the foreman, testified that it was the duty of Showers, as foreman, to be particularly careful to see that all the blasts had exploded, and to warn the plaintiff of any missed charges.

What may have been the duty of those engaged in blasting in this mine, or what may have been the duty

of those engaged as laborers in other mines, could not change the duty which this foreman was required to perform under the instructions of the superintendent; nor could such facts as these, proven or not, alter the responsibility which the defendant was under to the plaintiff for any negligence of itself or its foreman, whereby he may have been injured. It is not what may be the duty of laborers in this mine or others that is to measure the defendant's duty to the plaintiff. The law fixes that under the facts existing in the Cable mine. It is well settled that this foreman having the authority to employ and discharge the plaintiff, in fact having actually employed him and set him to work on many previous occasions, and on this very night,—under such circumstances the negligence of the foreman would be the negligence of the defendant corporation. This is really admitted to be the law and the fact by the counsel for respondent. *Spelman* v. *Fisher Iron Co.*, 56 Barb. 155. The *prima facie* presumption is that the defendant has discharged its duty to the plaintiff in this case. Hence this presumption must be overcome by proof of fault on the part of the defendant, by showing either that the foreman knew, or ought to have known, that the danger to which the plaintiff was exposed was extraordinary,—that is, that there was a charge of blasting-powder in the mine, where he was sent to work, which had not been fired. Wood on Master and Servant, sec. 368. If the danger is such that the master, by the use of reasonable and ordinary care, as it is defined in the Diamond case, heretofore quoted, might have known of it, his liability is the same as if he had known it actually. Wood on Master and Servant, secs. 345, 348, 398, and cases cited. And in regard to the ascertainment of the condition of this blast, the plaintiff had a right to presume that the defendant had done its duty, and to act on that presumption in going to

work in the cross-cut, where the blasts had been fired, as he was ordered. Wood on Master and Servant, sec. 356; *Gibson* v. *Pacific R. R. Co.*, 46 Mo. 170, and cases cited; *Wonder* v. *Railroad Co.*, 32 Md. 411; *F. W. J. & S. R. R. Co.* v. *Gildersleeve*, 33 Mich. 135.

If the defendant or its foreman knew, or by the use of reasonable diligence might have known, of the existence of the danger from this unexploded blast, it was his bounden duty to convey such information to the plaintiff. *Baxter* v. *Roberts*, 44 Cal. 190–193; *Spelman* v. *Fisher Iron Co.*, 56 Barb. 165. These are some of the more familiar principles of law on which this case should have been tried and presented to the jury in the court below. We cannot resist the conclusion that the plaintiff has been prejudiced by the manner in which this case went to the jury; and the importance of the case demands the utmost care in the application of the legal principles by which it should be governed.

For the reason that the instructions given at the request of the plaintiff are inconsistent with those, or some of those, given at the request of the defendant, and that the instructions mentioned, given at the request of the defendant, are not supported by the evidence, nor declaratory of the law applicable to this case, the judgment and order overruling the motion for a new trial are reversed, and the cause remitted to be tried again.

*Judgment reversed.*

MCCONNELL, C. J., and BACH, J., concur.