WILLIAM KELLEY, APPELLANT, *v.* THE CABLE COMPANY, RESPONDENT.

MASTER AND SERVANT—*Action for damages—Setting aside verdict.*—The plaintiff sued the defendant, a mining corporation, for injuries sustained by him from the discharge of giant powder, while he was at work in its mine. He obtained a verdict, which the District Court set aside on a motion for a new trial. *Held,* the evidence in the case shows clearly that the plaintiff's injuries resulted from an unavoidable accident incident to the risk of mining, for which the defendant was not responsible, and that the verdict was properly set aside.

APPEALS—*Former decision—Instructions.*—*Held,* in the case at bar, that the decision on the former appeal (*Kelley* v. *Cable Co.* 7 Mont. 70) was the law of the case, and that the instructions given (see statement) seem to have been in accordance with said decision, and the one refused (see statement) in conflict therewith.

*Appeal from the Second Judicial District, Deer Lodge County.*

STATEMENT.

The plaintiff, William Kelley, while at work in a mine belonging to the defendant, the Cable Company, of which he was an employee, struck his pick against some giant powder and sustained severe injuries from the explosion which ensued. He brought an action for damages, and the first trial resulting in favor of the company, appealed to the Supreme Court and obtained a reversal. (*Kelley* v. *Cable Company,* 7 Mont. 70.) The present appeal was from an order of the District Court setting aside a verdict in the plaintiff's favor for ten thousand dollars, which he had obtained on a second trial, and granting the defendant a new trial. The facts sufficiently appear in the former and the present opinion. The instructions to the granting of which objection was made on the second trial were as follows:—

"No. 16. The jury are therefore instructed that if, at the time and place mentioned in the complaint, there existed any missed charge, or charge not discharged or shot off, the existence of which the defendant's proper agents or employees knew of,

or could have discovered by the use of proper care or diligence, to wit, ordinary care and diligence, as defined in the instruction given you, and if the same constituted an unknown or concealed danger, and if plaintiff was not informed thereof, and did not know of it, and was injured thereby, the defendant is liable."

"No. 17. If a master, or person or persons for whom the master is responsible, makes it impossible by negligently or in an incompetent way discharging blasts in a mine, to discover the existence of missed charges, he may be charged with the knowledge of such existence."

"No. 21. If there was culpable negligence on the part of an employee or employees of defendant, for whom it can be held liable, the plaintiff was not obliged to anticipate such negligence by making inquiries or otherwise, he had a right to assume that every one else would do his duty, and to act upon that belief."

Instruction No. 22, claimed to have been erroneously refused, was as follows: "If the jury find from the evidence that in the mine of the defendant known as the Cable Mine, it devolved upon the men engaged in blasting to ascertain whether or not the blasts put in by them had been discharged, and that Harvey Showers, the foreman, was also directed to ascertain if all of the charges put in by the men engaged in blasting were discharged, but that this direction was not given for the purpose of relieving the men engaged in blasting from performing their duties in this respect, but as an additional precaution against accident, and that in all well conducted mines, managed by skillful and prudent men, the duty of determining whether or not a blast has been discharged devolves upon the men who put in the blasts; then the said foreman should be considered as performing only the duties of one engaged in blasting, and not the duties of his principal, the Cable Company, the defendant in this case, and the defendant would not be liable for his negligence in failing to ascertain if there had been a failure to discharge a blast."

· *F. W. Cole,* and *William Scallon,* for Appellant.

The decision of this court on the former appeal is the law of the case. (*Palmer* v. *Murray,* 8 Mont. 174.) The decision of *Kelley* v. *Cable Company,* 7 Mont. 70, asserted the correctness

of the instructions given by plaintiff. The same were repeated on the second trial with the exception of one which was refused. The defendant's exceptions to such instructions are, therefore, not well taken. Defendant's instruction No. 22, refused, was open to the same objections, both in view of the law of the case and of the evidence, as the instructions upon the same proposition given upon the former trial and disapproved by this court. It embodies the same idea, and the evidence as to the duty of the foreman in this mine is similar. The exception to the action of the court in overruling defendant's motion for a nonsuit can be of no benefit to the defendant, *first*, because there was sufficient evidence to sustain plaintiff's case; and *second*, because the point was waived by the defendant proceeding with the trial and introducing testimony. (*Accident Ins. Co.* v. *Crandal*, 120 U. S. 527.) Upon the evidence, we submit that a careful examination of it will show that the preponderance of testimony is in favor of the appellant.

*W. W. Dixon*, and *Knowles & Forbis*, for Respondent.

The former decision of this court in this case (7 Mont. 70) did not settle the question of the correctness of the instructions given for the plaintiff. That was the appeal of plaintiff, and the instructions given on his part were not in issue. The court stated: "We are not called upon to review the instructions given by the court at the request of the plaintiff. If any one of them is erroneous the appellant is not in a condition to complain. But on a casual examination, as modified by the court, they seem to embody the law of the case, and appear to have been correctly given." The instructions given for the plaintiff (Nos. 16, 17, and 21) were clearly wrong. They make the liability of a corporation much greater than that of an individual, whereas, in law, it is the same. They also state the doctrine so broadly and unqualifiedly as to make a corporation liable for the negligence or carelessness of any one in its employ, and ignore entirely the question of the negligence of fellow-servants. The instruction asked by defendant, and refused by the court (No. 22), should have been given. When a foreman undertakes to perform the duties of a fellow-servant the master is not liable for his negligence. (Wood on Master and Servant, §§ 451–457.)

For authorities upon the different questions of law involved in this case we refer to respondent's brief upon the former appeal in this court, and ask the court to consider it as part of this brief. We also cite the following authorities as in point here: The burden of proof of negligence is on plaintiff. Wood on Master and Servant, § 382; 2 Thompson on Negligence, pp. 1053–1055; *W. & G. R. R. Co.* v. *Gladmon,* 15 Wall. 407. And to the same point, and that no presumption of negligence arises from the mere happening of the accident, see, also, Wood on Master and Servant, § 368; *The Nitro-glycerine Case,* 15 Wall. 537; *Wabash, S. L. & P. Ry. Co.* v. *Locke,* 112 Ind. 404; 2 Am. St. Rep. 193; *Alleghany Heating Co.* v. *Rohan,* 118 Pa. 223; *Murray* v. *D. & R. G. R. R. Co.* Sup. Ct. Colo. Mar. 9, 1888; *P. S. Co.* v. *Clare,* 127 U. S. 45. If it is uncertain who is in fault no recovery can be had. (Wood on Master and Servant, § 408.) If the injury may arise from two causes it must be attributed to the one not involving the negligence of the master. (*Searles* v. *Manhattan Ry. Co.* 101 N. Y. 661.) The master is presumed to have discharged his duty. (Wood on Master and Servant, § 346.) The master is only bound to the exercise of ordinary and usual care and prudence to protect his employees against accident. (Wood on Master and Servant, pp. 680, 688, 689, and n. 2; *The Nitro-glycerine Case,* 15 Wall. 524; *Murray* v. *S. C. R. R. Co.* 1 McMull. 385; 36 Am. Dec. 284; 2 Thompson on Negligence, pp. 971, 972, 982; Shearman & Redfield on Negligence, §§ 92, 93, 94; *Hough* v. *Ry. Co.* 100 U. S. 213–218; *Malone* v. *Hathaway,* 64 N. Y. 5; 21 Am. Rep. 572; Wood on Master and Servant, pp. 892, 893, 894.) An employee takes upon himself the ordinary risks incident to the business and the risk of the negligence of his fellow-servants. (*Chicago & M. R. R. Co.* v. *Ross,* 112 U. S. 377, 382, 383; Wood on Master and Servant, §§ 326, 328.) When no negligence is shown a nonsuit should be granted. (Wood on Master and Servant, § 383; *Kielley* v. *Belcher S. M. Co.* 3 Sawy. 500; *Randall* v. *B. & O. R. R. Co.* 109 U. S. 478; *Warner* v. *Erie R. R. Co.* 39 N. Y. 468; *McDonald* v. *Hazletine,* 53 Cal. 35.) Persons sustaining the following relations are held by the authorities to be fellow-servants, so that the employer is not liable for injury to one caused by the negligence of the other: The brakeman

of one train and the engineer on the same train. (*Randall* v. *B. & O. R. R. Co.* 109 U. S. 478; *M. P. Ry. Co.* v. *T. & P. Ry. Co.* Cir. Ct. La. Mar. 1887; 31 Fed. Rep. 527.) The foreman of a gang of laborers employed by a contractor and one of the gang. (*Anderson* v. *Winston,* Cir. Ct. Minn. June, 1887; 31 Fed. Rep. 528, and *Olson* v. *N. P. M. & M. Ry. Co.* Sup. Ct. Minn. 1888.) The men engaged in blasting in a mine. (*Kielley* v. *Belcher S. M. Co.* 3 Sawy. 500. See, also, 2 Thompson on Negligence, pp. 1026–1034; *Murray* v. *S. C. R. R. Co.* 1 McMull. 385; 36 Am. Dec. 287, n.) The foreman of a mine and a miner (under Civil Code of California). (*Stephens* v. *Doe,* 73 Cal. 26.) A track repairer and an engineer of an elevated railroad. (*Van Wickle* v. *Manhattan R. R. Co.* U. S. Cir. Ct. N. Y. Jan. 14, 1886; 32 Fed. Rep. 278.) A section hand running a hand car and an engineer running a train. (*Easton* v. *H. T. C. R. R. Co.* U. S. Cir. Ct. Tex. Nov. 1887; 32 Fed. Rep. 893. And see opinion in this case where the decisions of the United States Supreme Court are commented on.) A section or tract man and an engineer or brakeman. (*Connelly* v. *Minneapolis E. Ry. Co.* Sup. Ct. Minn. Dec. 27, 1887.) A blacksmith who repairs a chain and a workman who uses it. (*Rogers L. & M. Works* v. *Hand,* Sup. Ct. N. J. July 17, 1888.) A master machinist and a fireman. (*C. & I. C. Ry. Co.* v. *Arnold,* 31 Ind. 174; 99 Am. Dec. 615.) A servant takes the risk of the negligence of his fellow-servants as one of the risks of his employment, and to constitute fellow-servants, the employees need not be at the same time engaged in the same particular work. It is sufficient if they are in the employ of the same master in the same common work, and are performing services for the same common purpose. (*Lewis* v. *Seifert,* 116 Pa. 628; 2 Am. St. Rep. 631.) We think from what is stated above that the court below was justified in granting a new trial for errors in law, and because the verdict was against law. Where the evidence is conflicting, granting or refusing a new trial for insufficiency is peculiarly within the discretion of the court below, and its action will seldom be reversed. (*Gerold* v. *B. & B. Co.* 67 Cal. 124, and authorities cited; *Sullivan* v. *Wallace,* 73 Cal. 307.) This principle alone should be conclusive against reversing the order of the court below in this case:

The rule is, that points not under consideration, or which are incidentally considered, or which can only be augmentatively inferred from the judgment, are not conclusive, and should not be considered as the law of the case. (Estoppel and Res Judicata, p. 122; *Coit* v. *Tracy,* 8 Conn. 267; 20 Am. Dec. 110; *People* v. *Johnson,* 38 N. Y. 63; 97 Am. Dec. 770; *Tams* v. *Lewis,* 42 Pa. St. 402.) The opinion of a court outside of the issues involved in the case are *obiter dicta* and of no authority in any case. (*Cohens* v. *Virginia,* 6 Wheat. 399–401.) Defendant's exception to the refusal of the court to grant a nonsuit was not waived by defendant's introduction of testimony. *Accident Ins. Co.* v. *Crandal,* 120 U. S. 527, does not so decide. Indeed, the United States courts have no authority to order a nonsuit against the will of the plaintiff. (See *Castle* v. *Bullard,* 23 How. 172.) But our practice expressly allows it. (Code Civ. Proc. Mont. § 242, subd. 5.) It is only where defendant's own evidence, after motion for nonsuit is overruled, supplies the defects in plaintiff's case that defendant waives his right (*Abbey H. Assoc.* v. *Willard,* 48 Cal. 614); otherwise error in refusing to grant a nonsuit may be reviewed on appeal. (*Rochat* v. *N. H. Ry. Co.* N. J. Mar. 1887.) This question as to nonsuit is now, perhaps, not very material, as on the motion for a new trial the court could review the entire evidence.

LIDDELL, J. — A full statement of the pleadings and issues involved in this litigation will be found in a former opinion of this court, reported in 7 Mont. 70. We there reversed the judgment in favor of the defendant on the ground of conflicting and inconsistent instructions, and remanded the cause for a new trial. The second trial has resulted in a verdict in the plaintiff's favor for ten thousand dollars, which on a motion for a new trial was set aside by the judge *a quo,* and an appeal from that order brings the case before us for review. The defendant relied upon two grounds for a reversal of the verdict, either of which if good will sustain the order appealed from ; *first,* that the verdict was contrary to the law and the evidence; and *second,* that the court gave the jury certain erroneous instructions; but in passing upon this motion we are not informed upon what specification the court made its order setting aside the verdict.

After carefully considering the instructions given and refused, we are unable to agree with defendant's counsel that the former misstated the law which in the previous opinion of the court governed the case, or that the latter was applicable. But under the view which we have taken, it will be unnecessary to review any other point than that the verdict was contrary to the law and the evidence.

There is no dispute as to the principle of law upon which the case must be decided. The plaintiff bases his right to recover upon the sole ground that he had been injured by what is known in miner's parlance as a " missed charge," which was in the " drift " or " cross-cut " where he was sent to work by the foreman of the mine, whose duty it was under the instructions of the company to see that all blasts had been exploded, and that this duty was neglected. By way of defense the company contends that there was no negligence on the part of its agent, who was a skillful person, and exercised all due care and prudence in the performance of his duties, but that the injury suffered by the plaintiff was the result of an unforeseen and unavoidable accident.

The evidence is conclusive that while it was not the duty of the foreman in charge of the mine to be present and do the blasting, yet under the instructions of the corporation it devolved upon him to examine after the blasting had been done, and to see that the charge in every hole had exploded. The same duty is, however, under the general rules of mining, also that of the persons engaged in doing the blasting. During the day two men, McBride and Bowman, were drilling the holes and doing the blasting in the drift or cross-cut in which the plaintiff that night received his injuries, and therefore their testimony must have great weight in arriving at the facts in the case. McBride testified in such a way as to leave nothing to conjecture. He drilled the holes in the lower part of the face of the drift, loaded them, six in number, with two or three sticks of No. 1 Vulcan powder, a highly explosive compound of nitro-glycerine, fired them off, counted the discharges, went in after the smoke cleared away, and satisfied himself that the blasts in the lower part of the drift had all exploded. The testimony of Bowman, who drilled the holes in the upper part of the drift, is to the same effect. After firing the blasts, he went into the drift or cross-cut,

and made a personal examination, even digging down into the loose rock to satisfy himself that a certain cartridge had not missed fire. He corroborates McBride in the statement that he made the examination as to his own blasts, and states emphatically that the foreman went in with him and McBride, and examined to see if the shots had all exploded, and that there were no shots put in that day except where he and McBride worked. The testimony of Showers, the foreman, is fully corroborated by that of the two witnesses just referred to. In it he distinctly states that he went into the cross-cut and examined to see if the shots had all gone off, in that way verifying the count which he made of the reports, and his object in so doing was to ascertain that very fact.

The plaintiff describes the place of the accident as about three feet from the left-hand corner of the drift as you are looking in, and about eight or ten inches from the side of the wall, and the rock or boulder about which he was using his pick was eight or ten inches above the bottom; and at the time of the explosion there was about a car load of dirt and rock in the cross-cut.

His description of the precise point at which the explosion occurred is a little vague. But whether he intends to say it was in the side of the wall or the bottom of the drift, the testimony is utterly irreconcilable with that of the blasters and foreman as to the locality of the blasts. When the plaintiff was taken from the mine after the accident, in reply to questions as to how it occurred, he stated that he was stooping over using his pick in some loose rock, when he struck a piece of giant powder, which caused the flash and explosion. That he made this statement to Savery, Showers, and Judge Hubbard on the night of his injuries is not even denied or contradicted, and under the circumstances this is entitled to consideration, as showing what he considered the cause of his injuries at a time when he was unsuspicious, and anterior to the institution of this suit.

During the trial there was considerable expert testimony introduced to show the force of the explosives used in doing the blasting, but in the main it all agreed that if the plaintiff had received the "burden" intended to be thrown by the blast it would have been fatal to him; while it was stoutly maintained by others that a "missed hole," charged and loaded as described by

the men who did the blasting and exploding, as testified by the plaintiff, would have produced death instantaneously. That the plaintiff, while stooping over the "missed hole" into which he had driven his pick, thereby causing the explosion of the blast, and receiving the flames in his face, could yet have escaped the force of the charge, goes far to establish his own statement that the explosion resulted from his having struck a piece of giant powder in the loose rock. It does not seem possible to the thoughtful observer that a "missed hole," made firm by tamping, as this was, could have been fired in this manner and yet left no evidences of the explosion. And yet the witness, Bowman, testifies that he visited the scene of the accident about an hour after it transpired, but could find no evidences of an explosion.

How the powder came to be in that place cannot be accounted for except upon one of two theories: either it was left there through the carelessness of some one doing the blasting, or it was thrown out of its chamber in the face of the drift by the force of one of the other explosions; and it was sufficiently proven that such accidents occasionally occur without there being any way to prevent it. And just here it is entirely unnecessary to recapitulate the testimony upon this point; for unless it could be shown that the foreman had knowledge of such fact and failed to notify the plaintiff of the danger, or that he could have known of it by the exercise of reasonable diligence and care, the company would not be liable.

There is no contention that the company had not employed a competent, skillful, and prudent man as its foreman; that the men engaged in drilling and blasting were not also skilled and careful workmen; or that the tools and machinery were not all that was expected; or that the explosives used as well as the caps or primers were not of the standard, and such as were used in other mines for like purposes; but that it was the neglect by the foreman of his duty to see that the blasts had all been fired, and to notify the plaintiff in the event they had not, which occasioned or led to the injury. This was the proof which it was incumbent upon the plaintiff to introduce in order to establish his right to recover, and while slight proof might have shifted this burden upon the company, yet when the defendant has shown the employment of a prudent and skillful foreman, who care-

fully and thoroughly in company with the blasters examines and satisfies himself that all the charges had been fired, and who adopts all the reasonable and usual precautions for finding out that fact, we cannot but conclude that the company has exercised all reasonable care and diligence for the protection of its employees.

Against this positive and uncontradicted testimony of the foreman and the two men engaged in doing the blasting, that the charges had all been exploded, and that this fact had been verified by actual count and inspection of the locality, we are asked to infer that they have sworn falsely, because in the opinion of four miners (sworn as experts), who heard the plaintiff testify it was a missed hole, and accepted this as a fact, it was negligence in the foreman not to have discovered it.

It is the general concurrence of courts, that the testimony of experts even when admissible is uncertain and unsatisfactory, for an expert is never called as a witness unless his interest and views have been previously ascertained to be with the party calling him, and even in the present instance it is plain that reputable opinion may be found on either side of the case. (*Purifying Co.* v. *Christian*, 4 Dill. 448; *Barrett* v. *Hall*, 1 Mason, 447; *Daniels* v. *Foster*, 26 Wis. 686; *People* v. *Morrigan*, 29 Mich. 5.) While the testimony of experts is undoubtedly to be treated and weighed by the same rules as applied to other evidence, yet we know of no case in which the mere opinion of experts is allowed to outweigh the positive, corroborated, and uncontradicted testimony of three unimpeached witnesses to a fact; and more especially must this be the case when, as in the present instance, the opinion is based upon a disputed state of facts.

The obligation of employer and employee is mutual, and it is implied in the contract of hire that the master shall be liable for injuries which result from negligence, fraud, malice, or the exposure of his servants to risks not contemplated by the agreement; while the servant impliedly assumes all the ordinary risks which result from the nature of the employment. Notwithstanding the progress and advancement in the art of mining it yet remains a hazardous and dangerous occupation, which in spite of the many obligations of the owner of a mine to his

employees, embraces other risks which the servant assumes as incident to the calling. This liability of the corporation and that of an individual toward their employees is the same, differing only in that the individual may if he choose personally supervise his business, while the corporation can only act through its agents.

I stated before that the company had exercised all care in the selection of a foreman, who was proven to have been a man skilled in the business of conducting a mine, and a most careful and prudent person for such a position; and in this respect the defendant has complied with the law. Shall it now be subjected to the payment of damages after its foreman has exercised all the diligence and care that could be thought of to insure the safety of the miners? The defendant can only act through its foreman, and from the very circumstances and nature of the accident it was impossible for him, or the men engaged in the blasting, to have known that the giant powder was contained in the loose rock, without moving it, the very thing the plaintiff was employed to do. The obligation of the company was not to insure the plaintiff against all injuries, but that through its agents it would do all that human foresight, care, and diligence could reasonably do, to protect him from the danger of unexploded charges or blasts.

The dictates of intellectual belief are as imperious as those of conscience, and after a critical examination of the facts and the law governing the case we are irresistibly impelled to the conclusion that the defendant's foreman exercised all the prudence and care which he could reasonably have done to discover whether the blasts had been exploded; that there was no negligence on his part; that the plaintiff was not injured from the explosion of a missed charge, but that his injuries resulted from striking his pick against a piece of giant powder in the loose rock, the presence of which was unknown to and could not have known with reasonable diligence to the defendant's officers; and that the plaintiff's loss is the result of an unforeseen and unavoidable accident incident to the risk of mining.

The judgment of the lower court is therefore affirmed at cost of appellant.

*Judgment affirmed.*

McCONNELL, C. J., and BACH, J., concur.