AMERICAN MIDDLINGS PURIFIER CO. v. CHRISTIAN.

[See American Middlings Purifier Co. v. Atlantic Milling Co., Case No. 305.]

━━━━━━

## Case No. 307.

AMERICAN MIDDLINGS PURIFIER CO. v. CHRISTIAN et al.

[4 Dill. 448;[1] 3 Ban. & A. 42; 1 N. W. (O. S.) 91.]

Circuit Court, D. Minnesota. Aug., 1877.

PRELIMINARY INJUNCTIONS IN PATENT CASES — EFFECT OF DECREE OR JUDGMENT SUSTAINING A PATENT—PREVIOUS USER—EXPERT TESTIMONY— BOND AS AN ALTERNATIVE FOR AN INJUNCTION.

1. Application for an injunction pendente lite, to restrain the defendants from an alleged infringement of the plaintiff's patent for the "new process" of manufacturing flour from middlings: the validity of this patent having been sustained by the supreme court (Cochrane v. Deener, October term, 1876, [94 U. S. 780,]) and that judgment not being shown to have been collusive, and the infringement being made probable, the court ordered an injunction unless the defendants would give a bond conditioned for the payment of any final decree for money in favor of the plaintiff, and for keeping an accurate account of the amount of flour made by them, and to report the same every three months to the court.

[Cited in Hoe. v. Boston Daily Advertiser Corp., 14 Fed. 916.]

2. The principles which guide the courts in granting or refusing such injunctions, considered by Miller, circuit justice.

3. A decree or judgment of a circuit court, after full hearing or trial in an adversary cause, sustaining a patent, is very strong evidence of its validity in an application for an injunction; and such a decree or judgment of the supreme court is of still greater weight, if not absolutely conclusive.

[Cited in American Paper Pail & Box Co. v. National Folding Box & Paper Co., 51 Fed. 232, 2 C. C. A. 165.]

4. Previous user of the patent by the plaintiff, or those who claim under him, is not absolutely essential to the right to an injunction: if the validity of the patent has been established by a decree or judgment of the circuit or supreme court, the plaintiff, if otherwise entitled, may have an injunction without showing previous general user, especially where the patent is for a process, as distinguished from a machine.

5. Effect of plaintiff's laches on his right to an injunction, considered; and, under the circumstances, held not to defeat the right.

6. Expert testimony in patent causes, and the weight to be attached to ex parte affidavits, commented on.

[In equity. Bill by the American Middlings Purifier Company against John A. Christian & Co. for infringing plaintiff's patents Nos. 37,317, 37,318, and 37,321. Heard on motion for preliminary injunction. Motion allowed unless the defendants give security in the sum of two hundred and fifty thousand dollars. On final hearing plaintiff's bill was dismissed. American Middlings Purifier Co. v. Atlantic Milling Co., Case No. 306.]

─────────

[1][Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

This suit was commenced in May last, by the complainant, as the owner of the patent by assignment from the patentee, to recover damages in the sum of $300,000, for an alleged infringement by the defendants of the process for manufacturing flour and purifying middlings, which was patented to William F. Cochrane, originally in 1863, and afterwards by a reissued patent in 1874, on which reissued letters patent the complainant's claim is based. At this term of the court (June, 1877), the complainant's counsel moved, upon the bill of complaint and affidavits, that an injunction be issued, restraining the defendants from using this process in the manufacture of flour until the final determination of the suit. This motion was vigorously opposed by the counsel for the defendants, by models and a large number of affidavits, their defence being that Cochrane, the patentee, was not the first inventor of the process, but that, as long ago as 1856, a description of the same process was published in France as the invention of one Cabanes, and that it was patented by him in England in the preceding year; also that the process had been in use in this country for many years in the farina mills of New York, and that if the complainant ever had any rights, it had lost them through its laches or negligence, in allowing so long a time to elapse before asserting them or making them known. On the other hand, the complainant's counsel contended that this process differed substantially from that of Cabanes'; and that in the case of Cochrane v. Deener, [94 U. S. 780,] which was decided by the supreme court of the United States at the last October term, the validity of this patent was fully established.

Rodney Mason, and John B. & W. H. Sanborn, for complainant.

Gordon E. Cole, H. R. Selden, E. B. Selden, and Mr. Gridley, for defendants.

Before MILLER, Circuit Justice, and NELSON, District Judge.

MILLER, Circuit Justice, orally.—In the matter of the application of the American Middlings Purifier Company against John A. Christian & Co., we are compelled, this morning, to announce the result of our consultations on it, although, perhaps, very inadequately prepared to do it with perfect satisfaction to ourselves. I must leave today, in order to reach the circuit court at Denver, Judge Dillon not being in attendance at that court, and it will have been in session a couple of days when I get there in any event, and, under the circumstances, we must give it the best judgment that we have.

The application is for a preliminary injunction in behalf of the plaintiff, upon allegation that the process used in the manufacture of flour patented by plaintiff's assignor in 1863, and a reissue in 1874, is infringed by the defendants. There is no answer to the bill, and the motion is heard on the bill on the affidavits of plaintiff and the affidavits of defendants. The plaintiff brought suit on this same patent in the supreme court of the District of Columbia, a year or two ago, against Deener and others, for an infringement of it. In the court of that district the plaintiff failed to establish his case. Upon what precise ground the court below rendered its judgment I do not know, and it is not material. The plaintiff here and the plaintiff there took an appeal to the supreme court of the United States, and that case was heard and decided at the last term of court. The decision of the supreme court of the District of Columbia was reversed, and a decree was rendered in favor of the plaintiff in the supreme court of the United States. [94 U. S. 780.] The effect to be given this decree in the present proceedings is one of the main questions to be determined now. The counsel for the plaintiff in this case insists upon treating it as almost conclusive of the validity of the plaintiff's patent. The counsel for the defendants, in their argument, treat it as of very little value in a suit against the present defendant, who is a different party from the defendant in that suit.

I think that the uniform course of decisions in the courts of the United States, where a previous decision has been had by a circuit court with regard to the validity of a patent, has been to treat it as of the very highest nature, and as almost conclusive in an application for injunction in another case founded on the same patent. No one pretends, no one argues, that such a decision, even by a circuit court, is absolutely conclusive on a final hearing on the merits of the case; but since patents are of such extensive and general operation all over the country, and since the litigation in regard to patents has been found so expensive and so wearisome to the courts, it has become almost a matter of necessity, after the validity of a patent, as distinguished from the question of infringement, has been passed upon by a competent tribunal upon a fair hearing, to treat that decision, in any future application in other courts and against other parties, as strongly persuasive of the validity of the patent; and this is especially so on the question of a preliminary injunction, and there is reason for it. The decision of the circuit court (I am saying nothing about the supreme court of the United States) in such cases is generally, I may add, always, except where there are cases of collusion, the result of careful and deliberate consideration, either of a protracted trial before a jury, or of a careful and full hearing upon depositions before a court. The presumption, therefore, that the title to the patent itself, and its validity (if that were brought in question in one of these suits), was more critically and more thoroughly looked into,

and decided upon better hearing and more mature consideration than it can be in a preliminary injunction, is very strong. Therefore, I think I may state it, fairly and correctly, that wherever a patent has been established, even by the decision of the circuit court, under a careful consideration, in a subsequent application, either before the same court or any other, for a preliminary injunction or for any preliminary relief, that decision is of very great weight.

This case stands on better ground than that. The decision which is brought to our notice in this case is a decision of the supreme court of the United States, the court whose judgments are final upon all questions of patent law; whether the parties in interest now were before it or not, its decision as to what is law in the case governs the decision of all the other courts in the United States. Where the question is one of complicated facts, and the facts may be controverted, and are controverted in the supreme court of the United States, with regard to the validity of the patent, of course the decision of that court upon those facts is conclusive, so far as the facts are the same; and, in addition to that, it is a very fair presumption that wherever the validity of the patent is a question which is brought to the attention and consideration of the supreme court of the United States, all the questions concerning that patent which could possibly be before the court, were before it, and were fully and well considered, and received its full and careful attention. I, therefore, cannot agree with the counsel, who has so ably argued this case for the defendants, that the case comes here as though this was the first time the patent was brought before the court.

As regards this particular judgment of the supreme court of the United States, it is assailed on the ground, in the first place, that the validity of the patent was but a minor consideration in the case, and did not receive the full and careful attention of the court; and, in the second place, on the ground that the whole suit, from beginning to end. in which that question was decided, was collusive and fraudulent, for the purpose of procuring the judgment of the appellate court in favor of the validity of this patent.

As to the first proposition, that the question of the validity of the patent did not receive the attention of the court carefully, that is refuted at once by the record of the case, and by the opinion of the court. The record of the case shows that it was assailed; that as many as seven or eight different grounds assailing it were set up in the supplemental answer, filed for that very purpose, and it shows that these questions were argued by the counsel upon their briefs, and it shows that the court turned its attention to the questions that were raised in this defence, especially upon that class of objections which go to show the want of novelty—the

one that is most relied upon in this case. I may, perhaps, add my personal knowledge of what took place in court which I do not think I am at liberty to disregard here, although sitting in another court, as to the attention which the whole of this case received. It was submitted to the court on printed argument very early in the term—I should think certainly as early as sometime in the month of October; that is my recollection. It was submitted on printed briefs, on both sides, of—taking them together—I should think, five hundred pages. It was held under advisement by the court before it was decided in conference for two or three months, up to the adjournment just previous to Christmas. It was then decided, and the opinion confided to one of the most careful, laborious, and able patent law judges of the United States. He kept that opinion from the week preceding Christmas until the last week of the session of the court, in March. It underwent, undoubtedly, a careful scrutiny and consideration in every branch of it. It is impossible, therefore, under these circumstances, to infer that all there was in the case did not receive the fullest and most careful consideration of the court. There is another thing that shows that it received the consideration of the court. It is possible, in a court like ours, where we are all of one opinion and at one time, that something may have escaped our attention; but two of the best patent lawyers in that court dissented from the opinion and judgment of the court, as appears by the record. The fact that these judges dissent shows that their objections must have been carefully considered in court, as they were in the conference, and rebuts any suggestion that there was any hasty or ill-advised action in the matter.

As regards the collusion: It is a sad thing to say that perhaps no class of cases coming before the courts have as much fraud, perjury, and wicked conduct generally, as patent cases. The vast amount involved in some of them, the conflicting interests, with a variety of people of all classes—the contest between patentees themselves, in which the sums involved are almost fabulous—lead to perjury and fraud of the grossest kind. It is the undoubted experience of the judges who are familiar with patent cases, that there is a large amount of false swearing and corruption in them. It is possible, therefore— our court has recognized the fact in two or three cases coming before it—that there may be a collusive suit brought to our court for the purpose of establishing a patent, in which the control of the litigation is all upon one side, though apparently there is an honest contest between two parties with regard to it. When, therefore. a proposition of that kind is made, it is to be considered. But there is no attempt here to establish a collusion by any affidavits or proof that either of the parties engaged in that case, in the supreme court of the United States, or in the

district court, were committing a fraud. There is no attempt, except from the character of the record itself, to show that there was anything but an honest contest in regard to it. The inference that it was a collusive suit is attempted to be drawn from the circumstances, which, I think, are not at all conclusive, and hardly persuasive. One of these is that the suit was suddenly brought, after the reissue of the patent, and speedily carried through the courts. But a reason for that is quite obvious in the nature of the transaction itself. The reissue, on which alone any of these suits are attempted to be sustained, was made at a time which left but five or six years of the patent to run. The parties owning the patent under it knew—it is now apparent, at least, on these affidavits before me—that it was generally known that the patent would be resisted by a very large and influential body of men. It was nothing, therefore, but sensible, reasonable, and proper that the patentee should select the nearest infringer of the patent, and get his case through the courts in a speedy manner, to decide whether he had such a claim, and that is what he did; and I see nothing indicative of fraud or collusion in the fact. If it could be shown that the defendants selected had no interest in the contest; that they were not actually engaged in milling at all; if it could be shown that they made any suspicious bargain with the plaintiff in that case, all these considerations would go to impeach the character of the case; but, with a single exception, that after the suit had been decided in favor of the defendants below, the parties agreed to some arrangement about the damages which might be recovered, or the mode of settling the amount of damages, if the plaintiff finally succeeded, there is nothing I can see in the case that justifies a suspicion of any collusion or fraud in the matter. I am, therefore, compelled to hold that that decision possesses all the validity, and is entitled to all the respect and consideration, and to all the weight which any other decision of the supreme court of the United States could have. And I am not aware—I do not believe—that any case exists or can be found in which an inferior court has held, on an application for a preliminary injunction, that the decision of the supreme court of the United States establishing the validity of a patent can be assailed in the court below. I do not myself go so far in this case as that. I do not say on this application it could not be shown that a patent was invalid if the evidence was strong enough to overcome the credit that is due to the judgment of the supreme court of the United States. But I say there is no precedent for holding that even that can be done; and I certainly am unwilling, myself, sitting here as a circuit judge, to hold that that decision is of no more weight and character than the decision of a circuit court, which is open to re-examination in the supreme court of the United

States, which might be carried up there and reversed, and which is made by only one of the judges of an inferior court.

Other considerations are brought to bear in this particular case, conceding the force to be given to that decision by this court, why the injunction in this case should not be granted. The first of these is a statement by counsel for the defendants, that no injunction can be granted unless there has been proof of previous user of the patent by plaintiff, or parties claiming under the same patent, and it is denied that there is any such proof here. If any very extensive evidence of previous user is an indispensable thing to the granting of an injunction, I am prepared to admit that it is not proven in this case. But I do not understand that previous user is an absolute and indispensable element of granting an injunction. I understand it stands only as one of the means or modes of satisfying the court of the right of the plaintiff to an injunction. It is to be presumed that when a party has used publicly and notoriously for any considerable length of time a patent, claiming exclusive right to it, the public have acquiesced in that claim, and against a man who comes to infringe it and to contest the rights of the plaintiff, there arises a presumption in consequence of that user, which is a very strong one; but does that user afford as strong a presumption as a deliberate contest in a suit through a circuit court and up to the supreme court of the United States, of the validity of the patent and the right of the plaintiff to its exclusive use? This is the thing to be established. This is the foundation. If this is conceded, or is established, the right to the injunction is clear, whether there is user or not; and to hold that no injunction can issue without several years previous user, is, in effect, to hold that if the public combine not to use a man's patent—the general public—or if he can't introduce it into use, or if he can't convince the public that it is a thing profitable to be used, and if it is (as it is in this case) of a thing that he can't, and probably will not, use himself, but is intended for the use of others, in a large measure, why it would follow, as a matter of course, that he never can get an injunction; and that his patent may run out and he never can get any value of it at all, because he has been unable to get anybody to use it. This is particularly applicable with reference to this process patent, because it is a patent, not for a machine, not for a product, not for an article, not for a patent medicine; it is a patent for a process or mode of doing a particular thing which is being done all over the world. How could he establish a user in this case unless he himself was able to own an extensive flouring mill, or to pay somebody to use his patent enough to make it a general user? I do not think there is anything in that question as applicable to

the present case, and especially in view of the fact which I shall now proceed to consider under the second objection, and that is laches. In other words, the argument of the defendants is that the plaintiff, having procured his patent in 1863, laid by and took no steps to enforce it against anybody until 1874 or 1875. That argument struck me at first as having a good deal of force in it, and it is founded, if it were true, and there is no excuse for it, in very strong principles; because if a man has a patent of that kind and he sees the world at large using it for eight or ten years, takes no steps to arrest it, sues nobody, sets up no claim, gives no warning, it is a very natural and strong reason why, under these circumstances, he should not be permitted to come subsequently and arrest everybody by process of injunction. In each and in every case that question depends upon its own facts.

However, it is apparent that in the original patents issued in 1863, there were defects in the specifications, which rendered them unavailable, in the estimation of the plaintiff, in a suit against anybody who was infringing them, for the reason that they really included the rights of the prior patentees, Cogswell & McKiernan. He, therefore, before he commenced any contest with these parties, who were very numerous and very powerful, was under the necessity of giving up his patents and asking a reissue, not that he might enlarge his claim, as so often is done to the detriment of the public, but, in point of fact, that he might diminish and limit his claims, which he did, being aware that he had to enter into a severe contest, and, therefore, equipped himself by casting off all that might embarrass him, and restricting his patents to that which he thought he could carry; and this he had a right to do, and in this he was wise. There was, therefore, no laches in that matter, unless, during all this time his patents, as they originally stood, were in general use, and in such use as to attract his notice and attention. The affidavits of the defendants remove that difficulty or objection, because, unless we consider the production of farina by a particular process as infringing the patent, the defendants themselves here show, by their own affidavits, that what is called the new process milling commenced in this country about 1871 or 1872, and they assert that, and insist upon it in their own affidavits; so that, supposing the plaintiff in this case to have been vigilant, as vigilant as any man could expect him to be, it was only about 1871 or 1872 that there was any general attempt to use his patent or to infringe it, and then, if you will suppose him to have instituted his inquiries with a view to commence proceedings, it is no great length of time to allow him a year or two to see how far his patent covered those supposed infringements, and how far his patent, as it existed, could be enforced against them.

And so, up to the time that he got out his reissued patent, I see no reason to charge him with any laches or negligence in the matter; and it will hardly be pretended, I think, that laches could be imputed to him after that time, because since he got his reissue of the patent, he selected the nearest and quickest opportunity to bring it to the test of the courts.

The main difficulty and embarrassing part of this case, to me, and to my associate, is the next question that presents itself, and that is, the endeavor, by affidavits, and exhibits, and models, to show, in point of fact, that the patent of the plaintiff was anticipated—that it was not novel, and that it was, therefore, void. In other words, to show that the decision of the supreme court of the United States, holding that it was a valid patent, was an erroneous decision, and not, as counsel very courteously says, because it made a mistake in principle, but because there was a defect of the testimony in that case which is supplied in this.

That branch of the subject is embarrassing for two or three reasons. In the first place, I do not pretend—I cannot speak for my associate in that regard—that I am as competent to decide it as some other judges more conversant with patents and scientific principles. In the second place, I have no confidence myself in the impression produced by any number of ex parte affidavits of experts. My own experience, both in the local courts and in the supreme court of the United States, is that, whenever the matter in contest involves an immense sum in value, and where the question turns mainly upon opinions of experts, there is no difficulty in introducing any amount of them on either side; and yet this class of cases is one in which there is value to be attached to experts. But if I had time to sit down and examine, one by one, all of these affidavits most of which, although they are supposed to be treating of patents, only amount, after all, to saying, each one of them, "as I understand it, such and such a thing was done," or "as I understand it, such and such a thing was not done," and, "as I understand it, such and such a patent involves such and such a principle, and others do not," all of which, after all, was only their opinion, although they state them as facts; I say if I had time (and that would require two or three weeks), I might possibly go into this thing and reach an opinion which would, at least, be satisfactory to me, whether that patent was anticipated, and is, therefore, invalid. But I do not feel at liberty, in the face of what the supreme court of the United States has decided, after five or six months deliberation, upon these ex parte affidavits, which I have not the time to examine fully, to hold, in reference to this temporary application, that this patent is invalid; and that is about all I will say on that subject, because it is all that is necessary to say, since the whole

subject will be fully investigated hereafter, when the defendants will have the fullest and fairest opportunity, after they have filed their answer and stated specifically upon what prior use, prior patents, or prior publications they intend to rely, after they have brought them to the test of depositions, witnesses cross-examined, models carefully looked into in the presence of the court, and explained; after all that they will have an opportunity to have full justice, and if they can show that this patent is invalid, as I hold it is not conclusively shown, they will have an opportunity to do it. But I do not now think that I would be discharging my duty to decide on this hasty hearing, that this class of affidavits, which, as I heard them read, and as I have looked into them in my private room, do not satisfy me of the proposition of the defendants, that I was at liberty, because of their number, to hold that this patent is an invalid patent.

There are two other reasons urged, not against this patent, not against the patent itself, but which, admitting the patent to be a valid patent, why the injunction should not be granted. The first of those is that there is actually no infringement proved; the infringement is denied by the affidavits, even conceding the patent to be valid. As to that, it is hardly necessary for me to say more than that the defendants themselves creditably and manfully rely upon impeaching the patent, and hardly venture to say that they have not used the process of the plaintiff. Their whole evidence goes to show that they have used, and they insist that they have used a machine which destroys the plaintiff's patent because it antedates it. They themselves have narrowed the question, then, not to one of infringement, but to the validity of the patent. It is manly in them to do so. I have no doubt myself that this is to be the test case, unless the one already decided is; and I take the liberty of saying that the cross-imputations of the gentlemen here, about fraudulent misconduct on both sides, seem to me utterly without foundation. The plaintiff has shown himself a worthy foe, and a manly one, through the whole of this contest. He prepared himself in proper panoply when he went to the supreme court of the United States and got his decision before he attempted to trouble the little mills all over the country. When he has got himself ready for the fight he selects the advance foe, the party who says, "I own the largest mill in the western world," and who has the assistance of all the other millers, with notice to come and defend his suit. Knowing that fact, the plaintiff selects that very party as the one upon whom he makes his first attack. If he had no faith in his patent, if he had intended to go around and blackmail the smaller manufacturers, he might have hunted up those who couldn't defend, in little out-of-the-way places. He has not

done it, and he makes an open battle. Defendants also make a manly defence. Although they say they don't think they have infringed, they come squarely up and say they mean to fight the validity of the patent. They have a right to do it, and they will have it under this decision. I hope this case will prove an exception to the fraudulent devices which have been practised, and that both parties will conduct this suit hereafter in that straightforward way which has characterized them both up to the present time.

The defendants also say that because they are of great ability and amply able to respond to any damages that may be obtained by the final decree, and because their operations are very extensive, and the issue of an injunction would interfere very largely with their business, would be productive of much more harm to them than the refusal of the injunction would be to the plaintiff, therefore the injunction ought not to be issued.

In regard to the issuing of an injunction, I do not think that the ability of the respondents to pay ultimate damages ought to be very much considered in this case. It is a matter worthy of very great consideration that the patent of the plaintiff will expire inside of three years from the date of this present application.

It is very easy for the defendants—very probably the defendants will contest this case so severely that no final decree will be obtained until the patent is exhausted, and it will remain a question of very grave doubt whether any decree rendered for damages after the expiration of the patent—unless some preliminary measure has been taken to give validity to it—would cover those damages. It is therefore important, it is absolutely necessary, if the plaintiff has any just claim, that the relief should be granted. It should be such as would enable it, if it finally got a decree, even if it was five or six years hence, to realize the benefit of this litigation. I am, therefore, of the opinion (in which my brother Nelson concurs), that it is our duty to grant the relief asked in this case, subject to a further provision, which has been well considered in previous cases, and which we have a right to apply, and which we propose to apply in this case. And in that view of it the responsibility and ability of the respondents is a great inducement to us to make the order which we propose to make, and that is an order granting the injunction, unless the defendants, within a reasonable time—say such time as convenient to my brother judge here, ten or twenty days—shall come in and give the bond which has often been required in such cases. In that view of the subject we think that nobody will be hurt. The defendants are amply able to give that bond.

The bond will be conditioned for the payment of any final decree for money in favor

of the plaintiff in this case, and conditioned for their keeping an accurate and faithful account of the amount of flour made by them in their mills with the machines which they admit they use, and for a report of that once every three months to the court, under oath.

I am very happy to be supported in nearly all that I have said, certainly in all that we have decided on this subject, by the case referred to by counsel for defendants, of Forbush v. Bradford, [Case No. 4,930.]

Judge Miller here read from this decision, and after hearing counsel in behalf of the respective parties, said: "Under all the circumstances of the case, we think that a bond for two hundred and fifty thousand dollars will be sufficient; we do not think that will be oppressive. That will be the order."

Ordered accordingly.

NOTE, [from original report.] The supreme court, in December, 1877, refused to set aside the decree in the Deener Case, the imputed collusion not being shown, but reserved the rights of other persons interested in the question of the validity of the Cochrane patent. [95 U. S. 355.] See American Middlings Purifier Co. v. Atlantic Milling Co., [Case No. 305.]