## BROWN MANUF'G CO. v. MAST et al.

### (Circuit Court, S. D. Ohio, W. D. December 3, 1892.)

#### No. 4,230.

1. PATENTS FOR INVENTIONS—COMITY BETWEEN CIRCUITS.

The rule of comity which requires a circuit court to follow the conclusions reached in another circuit respecting the validity of a patent, except in cases of clear mistake of fact or law, or of new evidence, is not rendered inapplicable by the fact that two decisions were rendered in such other circuit,—one overruling the other on rehearing; and the last decision will be followed, as the final conclusion of that court.

2. SAME—CONSTRUCTION OF CLAIM—ANTICIPATION—CULTIVATORS.

The first claim of letters patent No. 190,836, issued May 15, 1877, to William P. Brown, for an improvement in couplings for cultivators, consisting of a pipe box provided with a projection adapted to co-operate with a spring, weight, or the draft, to rock the pipe box against or with the rear cultivators or plows, is not for a combination, but for a single part, and, as such, was anticipated by the patent of June 11, 1872, to William Haslup. Manufacturing Co. v. Deere, 51 Fed. Rep. 299. followed.

3. SAME—INVENTION—ANTICIPATION.

The second claim of the patent, which is for a combination of the tubular bearing in connection with the projection or rigid arm attached by a spring to the main frame of the cultivator, and an upright bearing, so that the force of the spring and the lateral swing of the beam would co-operate without conflicting, discloses patentable invention, and was not anticipated either by the Chapman patent of 1868, for a horse rake, the Plagge patent, for an improved rail guide for wagons, or the Wheeler patent, for a rake for a grain harvester. Brown Manufacturing Co. v. Buford, 21 Fed. Rep. 714, followed.

4. SAME—INFRINGEMENT.

This claim is infringed by a cultivator made under patent No. 260,447, issued July 4, 1882, to Berlew and Kissel, which shows a pipe box connected to the plow beam by an upright bearing, and having a rigid, upwardly projecting arm, terminating in a jaw with three holes in it, to which is fastened by a pin a stiff rod, passing through a guide piece at its top, and surrounded by a spiral spring, which, by the interposition of a washer and pin, presses the rod downward, thus acting as a counterbalance to the weight of the plow and drag beam; for the flat spring of the patent and the rod and spiral spring are well-known equivalents.

5. SAME.

Infringement is not prevented by the fact that in defendants' cultivator the arm and rod are so arranged that, when thrown rearwardly beyond the perpendicular, the spring aids the operator to depress the plows; for, while this may be an improvement on the combination of the patent, that combination is still present.

6. SAME.

Infringement is not prevented by the fact that the vertical bearing connecting the pipe box and the plow beam are arranged in defendants' cultivator so that the brackets or arms and the bolt are fixed to the pipe box, while in the patent the parts are reversed; the brackets and bolt being attached to the plow beam.

7. SAME.

Nor is infringement prevented by the fact that in the patent the stirrup which carries the vertical bearing connecting the pipe box with the plow beam is fastened to the pipe box by a loop, and is made to rigidly connect therewith by longitudinal ribs, which engage with corresponding grooves on the pipe box, thus permitting a circumferential adjustment so as to regulate the tension of the spring, while in defendants' machine the pipe box has but two ribs, one above and one below, which engage with corresponding depressions in the surrounding stirrup,—the ten-

sion of the spiral spring being regulated by raising or lowering the washer and pin at its lower end by means of several holes in the rod; for these two springs, and their corresponding means of adjustment, are simple mechanical equivalents.

8. SAME—NOVELTY.
    The third claim of the Brown patent, covering the pipe box, having the longitudinal ribs, combined with the stirrup, having corresponding grooves and a clamping device, is void for want of novelty.

In Equity. Bill by the Brown Manufacturing Company against P. P. Mast & Co. for infringement of letters patent No. 190,816, issued May 15, 1877, to William P. Brown, for a cultivator. The alleged infringing machine was made under letters patent No. 260,447, issued July 4, 1882, to D. Berlew and M. L. Kissel. Decree for complainant.

Geo. H. Christy, for complainant.
Wood & Boyd and H. A. Toulmin, for respondents.

TAFT, Circuit Judge. This is a suit in equity, brought for the infringement of letters patent No. 190,816, granted to William P. Brown, and duly assigned to the complainant herein, the Brown Manufacturing Company. The defenses set up in the answer are want of novelty, absence of patentable invention in the patented device, and noninfringement. The patent sued on is for an improvement in the couplings of corn cultivators. These machines are for the purpose of loosening and keeping free from weeds the soil between the rows of growing corn. Their general form has long been known. They consist of an arched or crank axle, arched high enough to pass over the row of corn, connected with a tongue, and mounted on a single pair of wheels. To the axle, inside the wheels, are attached—one on each side—the forward ends of two beams or bars which carry the cultivators. These are very small, light plows, arranged in gangs of two. The attachment of the beam to the axle is usually made by a tubular bearing or pipe box, loosely embracing the axle, and securing free vertical motion of the beam, while between the pipe box and the beam end proper, and connecting them, is generally arranged a head having a bearing at right angles to the pipe box, by which lateral or horizontal motion is also given to the beam. Both vertical and lateral movements of the cultivators are necessary to successful corn cultivation. The plow beams are manipulated by hand; the operator walking behind, as with the ordinary plow, giving a hand to the handle on each beam, and hanging the reins about his neck or body. This was the general description of the Stover machine, patented in 1870, and referred to in the patent sued on.

To relieve the operator as much as possible from the labor of lifting the heavy cultivator beams, Brown, in a patent of 1872, applied a lifting spring to each of them, at a point halfway back from the axle, securing the other end of the spring to the fixed frame of the machine above. The obvious difficulty in the operation of such a device was that the constant lateral motion of the beams out of the vertical, required in practical tilling, would be resisted by the lifting force of the spring. In the patent in suit, this difficulty is entirely

cured by applying the spring to a rigid arm of the tubular bearing in front of the vertical pivot, on which the beam swings laterally. In this way the pulling and lifting power of the spring never interferes with the lateral motion of the beam. They co-operate, but do not conflict. This is what counsel for complainant contends is Brown's invention and real improvement. Brown suggested that, instead of spring power, counterbalancing weights, or a portion of the draught of the horses, might be also applied to the pipe box arm; and he shows a projection from the pipe box in his drawings and specifications by which the draught may be utilized to lift or depress the plow beams. The alleged infringement here, however, is only the use of spring power. The patentee described the application of the spring as follows:

"To render the manipulation of the plows or cultivators easy, I provide an arrangement whereby either springs, weights, or the draught power may be utilized in sustaining a part of the weight of the said cultivators when they are lifted from the ground to be hung up or shifted laterally. In accomplishing this, I construct the pipe box with a hooked arm, M, and arrange a stiff spring, N, of metal or rubber, upon the main frame above, so as to engage, by means of a loop, with the end of the arm, M, to rock the pipe box; and as the cultivator beam in the rear is rigidly attached to the pipe box by the stirrup or the sleeve, and its screw bolt, the spring has the tendency to rock the pipe box, and assist the driver to lift the cultivators."

The three claims of the patent are as follows:

"(1) The pipe box, provided with a projection adapted to co-operate with a spring, weight, or the draught to rock the said pipe box against or with the weight of the rear cultivators or plows, substantially as and for the purpose described. (2) The combination, with the crank axle and the gangs or plows, of the pipe box, having arm, M, the spring, N, attached to the main frame, the head, I, and the stirrup, G, or its equivalent, having brackets, H, and pivot bolt, A, and fastened to the pipe box, substantially as and for the purpose described. (3) The pipe box, E, having longitudinal ribs, combined with the stirrup, G, having corresponding grooves and a clamping device, substantially as described."

The validity of this patent, and of the several claims under it, was fully considered by Judge Blodgett, in the seventh circuit, in the cases of Manufacturing Co. v. Deere, 21 Fed. Rep. 709, and Same v. Buford, Id. 714. Judge Blodgett, in the Deere Case, in 1884, held that the first claim of the patent was substantially for a combination, the new and patentable feature of which consisted in the application of a spring to the arm of the pipe box so as to assist the operator in lifting the gang plows, and at the same time not interfere with the lateral motion of the gang plows on the upright bearing just back of the pipe box. In the case of Manufacturing Co. v. Deere, only the first claim of the patent was involved and considered. In the case of Manufacturing Co. v. Buford, 21 Fed. Rep. 714, the first and the second claims of the patent were involved, and passed upon, and in that case Judge Blodgett sustained the second claim for a combination as valid, and granted an injunction and an account. The first claim of the patent again came before the same judge in the case of Brown Manuf'g Co. v. Bradley Manuf'g Co., (in June, 1892,) 51 Fed. Rep. 226. The argument in that case, and the reconsideration of the first claim, led the judge to order a rehearing in the Deere Case, and to reverse the former decision. 51 Fed. Rep. 229. In these two cases the judge holds that the first claim of the patent is not for a combination, but for a single part, namely, a pipe box provided with a projection adapted to co-operate with a spring, etc.; that the only part claimed is the pipe box, provided with a projection capable of being used with a spring; and that it could not be so construed as to make it a combination of the pipe box provided with a projection and a spring, together with the other parts of a cultivator or plow. He further found that a pipe box provided with a projection adapted to co-operate with a spring was found in the patent of Haslup, July 11, 1872, where there was a sleeve or pipe box working upon a crank axle for the purpose of attaching the plows thereto, and of enabling the plows to be rocked upon the axle by the hand of the driver, pressed upon a lever projection rigidly attached to the pipe box, and extending upwards to the driver's seat. The first claim was therefore held to be invalid, and the bill dismissed. The second claim, however, was not passed upon either in the Bradley opinion or in the second opinion in the Deere Case.

In considering the effect of a decision in another circuit upon the validity and infringement of a patent, Mr. Justice Brown, in the case of Searls v. Worden, 11 Fed. Rep. 501, spoke as follows:

"Upon general questions of law, we listen to the opinions of our brother judges with deference, and with a desire to conform to them, if we can conscientiously do so, but we do not treat them as conclusive. In patent causes, however, where the same issue has been passed upon by the circuit court sitting in another district, it is only in case of clear mistake of law or fact, of newly-discovered testimony, or upon some question not considered by such court, that we feel at liberty to review its findings. A division of opinion upon the same issue might give rise to litigation in a dozen different districts, to conflicting decrees, and to interminable contests between rival patentees. In case the defeated party is dissatisfied with the first decision, it is his right to resort to the appellate court, where a final decision can be obtained, which all inferior courts are bound to respect. The subject was so elaborately discussed by the late Judge Emmons, and the authorities so fully collated in Vulcanite Co. v.

Willis, 1 Flip. 388, that it is unnecessary to consider it further. We are content simply to announce our adherence to his views."

See, also, Hancock Inspirator Co. v. Regester, 35 Fed. Rep. 61; Chemical Works v. Hecker, 2 Ban. & A. 351; Purifier Co. v. Christian, 4 Dill. 448; Celluloid Manuf'g Co. v. Zylonite Brush & Comb Co., 27 Fed. Rep. 291.

It is clear from these authorities that, if Judge Blodgett has decided the question which is now submitted to this court, both comity and public convenience require that this court shall follow him in his conclusion, unless it be clear that new evidence has been adduced here which was not considered by him, and which, in the opinion of this court, ought to change the result. With reference to the validity of the first claim under the patent, the question is one simply of construction. It is a question of law. Whether the claim is to be considered a claim for a part or a claim for a combination is doubtful. If it is only for a part, counsel for complainant concedes that it is invalid. Whatever might be my view, were the question one of first impression, I am clear that it is now my duty to follow Judge Blodgett's construction, and hold that the claim is for a part only.

Complainant's counsel admits the rule of comity, but contends that it has no application here, because Judge Blodgett has rendered two opinions, and that it is for this court to say which one it will follow. This last opinion is the final conclusion of Judge Blodgett, and it is that which comity requires me to follow. That is the decree now in force in the seventh circuit, conflict with which by act of this court should be avoided. Instead of weakening the second opinion as authority, the fact that the learned judge had previously reached a different conclusion, and announced it in a printed opinion, is evidence that the second opinion was only reached 'after full consideration. The first claim is disposed of. If Judge Blodgett's construction of it is incorrect, then, on appeal, either from his decree or mine, the rights of the complainant may be restored to him.

We now come to the second claim of the patent. This is a combination claim, which includes the combination of the free lateral movement of the cultivator beam, in co-operation with the lifting power of the spring, in such a way that the two do not conflict. This feature of the Brown patented device, as I have said, Judge Blodgett held to be a new, useful, and patentable discovery, in the first decision in the Deere Case, and on this ground sustained the validity of the second claim in the Buford Case. He has said nothing in his second opinion in the Deere Case to show that, in respect to the patentable character of what he found to be Brown's real improvement, he has at all changed his mind. The second Deere decision rested solely on the narrowness of the first claim, which, construed as he held it must be, did not include Brown's real improvement. The Buford Case, therefore, stands as a decision of a co-ordinate circuit court upholding the validity of the second claim of the patent in suit; and, unless it can be made to appear that there is before this court evidence not presented to and considered by Judge Blodgett in the Deere and Buford Cases, the

same rule of comity invoked by the respondents against the validity of the first claim requires me to sustain the validity of the second. Judge Blodgett said, in deciding the Deere Case, in 21 Fed. Rep. 709–711:

"I do not find in any of the patents cited any suggestion of the peculiar auxiliary means of assistance for raising the rear of the plows out of the ground, such as is shown in Brown's device in his patent. It is also true that the Haslup patent of 1872 shows a pipe box on the axle, with an arm or lever, O, extending upward from the pipe box, by which the driver could raise the plows from the ground; but that was a riding cultivator, and the function of the lever was different from that of Brown's projection. So, also, it appears from the proofs that prior to the patent now under consideration one or more devices had been patented, or put in public use, for using a spring or other equivalent force to aid in raising the rear of the plows out of the ground; but the attachment for that purpose was made upon the beam or handle, back of the joint where the plow was connected, and was practically of but little use, because, as the plows swayed out of the line of draught in either direction for the purpose of following a crooked row of plants, or of avoiding plants out of the line, or for the purpose of avoiding an obstruction, the spring worked against the strength of the plowman, and he was obliged, in order to change the direction of the plow, frequently to overcome the force of the spring, which became a serious objection in practical tilling. This patentee, however, applied the lifting lever by which the plows were lifted out of the ground practically to the end of the plow beam, because the projection, M, and the plow beam, being both, for the purpose of vertical motion, rigidly attached to the pipe box, the rocking of the pipe box by the lever or projection, M, tilted or lifted the rear of the plows, without in any manner interfering with the side or horizontal action of the plows. It is argued that the attachment of the lifting force to the end of the plow beam by means of the lever, M, has in it nothing new or patentable, when we consider that the lifting force of the spring or weight had, before this inventor's present patent, been applied to a point behind the end of the beam; but this, it strikes me, is one of the cases where the change in the location of the lever makes this device a success where prior efforts in the same direction had been failures. The fact that not only the defendant in this case, but other large manufacturers of cultivators, have at once adopted, substantially, the same auxiliary lifting device shown in the complainant's patent, is evidence of the popular acceptance of this as the practical solution of many of the difficulties which had been encountered in the attempt to use the older devices, and is such a change and improvement as required more than mere mechanical skill, and brings this device fairly within the domain of the patent law."

Again he says:

"No one was instructed by either the Stover or the Brown device of 1872 to apply the lifting device at the end of the plow by means of a lever projecting upwards from the end of the beam; and the fact that these older devices, which it is now claimed were susceptible of being modified by mere mechanical skill into a machine in its operation and effect like that shown by complainant's patent, rested without any modification until the present patent was promulgated, is quite conclusive proof to me that it required something more than mere mechanical skill to produce what is shown in this patent. By the patent now under consideration the patentee made an improvement in advance of what he had done by his patent in 1872, and, immediately upon the advantages of this device being exhibited to the public, the defendant and other manufacturers have seized upon it as meeting a felt want, and assumed to appropriate it to their own use."

Judge Blodgett has said nothing since he used the foregoing language to indicate that he is not still of the same opinion. Thirty-six patents, have been introduced in evidence, of which 19 were not presented to the consideration of Judge Blodgett in the Deere and Buford

Cases. Of these 19, counsel for respondent made no allusion to 8; and of the 11 remaining there are only 3 upon which counsel rely to show an anticipation of that feature. of complainant's patent which Judge Blodgett held to be a valid patentable discovery, namely, the arrangement of the tubular bearing in connection with the rigid arm and attached spring and the upright bearing, so that the force of the spring and the lateral spring of the beam would co-operate without conflicting. The first of the three patents is Chapman's patent for a horse-rake, patented in 1868. In this patent the teeth of the rake are carried, not on the axle, but on a shaft parallel to the axle at the rear of the vehicle, and to a projecting arm of this shaft is attached a spring secured at the other end to the frame of the machine; the spring acting on the projection, and tending to lift the teeth from the ground. The second is the Plagge patent for an improved rail guide for guiding wagons so that the wagon may be kept on the rails if it happens to. be running on a road where rails are laid. The patent shows an ordinary four-wheeled wagon, having guide rollers at the ends of the arms, adapted to be depressed by the driver's foot, and these guide rollers serve to keep the wagon on the track. They are lifted from their position at the side of the track by a weight, and in some cases by a spring, and are held up by these counterbalancing forces until the driver places his foot on the treadle, and overcomes the weight or spring, and by means of the lever forces the rollers down. The Wheeler patent is for a harvester rake for gathering in grain, with movable rake teeth to move the grain over a wide grain platform. The rake mechanism and the platform are back and at one side of the main frame, and are very heavy. They are connected with the main frame by a tubular bearing or pipe box, embracing the axle, and this pipe box has a projection upon which, indirectly, is exerted the force of the draught of the team, so as to slightly lift and in a measure neutralize the weight of the rear portion of the machine.

It is to be first noted, with respect to all three of these devices, that they are for purposes very different from those of the cultivator. In each of them the action of the dragged body is automatic, while in the patent at bar it is operated by hand. But, most of all, in no one of them was there any lateral movement required in the part to be lifted or depressed, with which movement an application of the lifting force at a point back of the tubular bearing would interfere. In other words, they none of them show the combination of the lateral motion and the vertical lifting motion in such a way as not to conflict. The contention on behalf of respondents seems to be that if they can show that, in any machine of any kind a counterbalancing spring, weight, or draft has been applied upon a tubular bearing on the side opposite to that at which the body to be lifted or depressed is attached, they have shown an anticipation of the complainant's patent. I cannot agree with this. The complainant's patent is essentially for a combination. It is not for any particular part, or for any particular two parts. It is not the tubular bearing with the rigid arm and spring alone. It is the tubular bearing with the rigid arm and spring, in connection with an

upright bearing, giving a free lateral motion to the body to be lifted. So far as appears from the evidence in this case, the lateral motion of the rear portion is only required in cultivators, and it would therefore seem to be clear that only in cultivators could the avoided difficulty arise, and only in such machines, therefore, could an anticipation of complainant's combination device be shown. It is quite true that there may be no patentable invention in taking from one art or class of machines a device, and applying it to another, where the difficulties to be overcome are substantially the same in the two arts or classes of machines; but I take it that in such a case the difficulties must be so nearly alike that the new application of the device would suggest itself to a skilled mechanic.

I am quite clear that there is nothing in either of the devices named which would suggest to an ordinary mechanic the useful combination hit upon by Brown in his cultivator. This would seem established by the fact to which Judge Blodgett alludes, that for five years after the date of the first Brown patent, which included both the spring-lifting and the lateral movement of the cultivator beam, no one applied a spring to the beam in front of the pipe box, although, when Brown did it, the usefulness of the change was at once recognized by general adoption and frequent infringement. But, whatever I might think of these three alleged anticipations, were it a case of first impression, Judge Blodgett passed on inventions claimed to be anticipations which involved substantially the same principle as the three patents which I have discussed. In the Smith horserake, an English patent of 1856, the tines or prongs of the rake were attached by a tubular bearing to a rock shaft, and were supported on either side of the tubular bearing by adjustable, counterbalancing weights, but Judge Blodgett did not see in this any anticipation of the complainant's patent. Again, in the Hollingsworth horserake of 1867, the prongs of the rake were attached to the body of the machine by what was really a tubular bearing, and were depressed by the force of a counterbalancing spring attached to this bearing on the side opposite to the prong. This, too, was before Judge Blodgett, and he saw nothing in it to invalidate the complainant's combination device. If these are not anticipations, certainly the three new devices now for the first time introduced in evidence are not. Following Judge Blodgett's decision in the Buford Case, therefore, the validity of the second claim of complainant's patent will be sustained.

We come now to the question of infringement. The second claim of complainant's patent is as follows:

"'The combination with the crank axle and the gangs or plows with the pipe box, having an arm, M, a spring, N, attached to the main frame or head, I, and the stirrup, G, or its equivalent, having brackets, H, and pivot bolt, B, and fastened to the pipe box, substantially as and for the purposes described."

The respondents' machine is, like that of the complainant's, a walking, straddle-row cultivator, having an arched axle and two wheels, so that the cultivator can straddle the row of growing plants. Attached to the axle, and adjacent to each wheel, are the two drag beams, carrying the shovels which are to operate upon the soil on either side of the row of plants. These beams are each provided with

plow-shaped handles, so that the attendant walking behind the machine can manipulate the drag beams properly in relation to the row of growing plants; and the machine is provided with a tongue, so that the team can be attached. The attachment of the drag beams to the axle is made by means of a pipe box, which is a long, pipe-shaped box, embracing and surrounding the axle adjacent to the hubs of the wheels. It has fastened upon it, and secured by a set screw, an adjustable collar, having in it a vertical bearing. This is embraced by the jaws of a casting, which are bolted to the ends of the drag beam. The arrangement allows both a vertical and lateral movement of the beams. The pipe box has a projecting arm, which terminates in a jaw having three holes in it. A pin passes through

one of these holes, and keeps in position the bottom of a rod, which at its top passes through a guide piece, also provided with three holes, bolted to the rigid arm of the machine above. A spiral spring surrounds the vertical rod, and at its top abuts against the guide piece, and at the bottom against a washer sustained by a pin passed through any one of four holes made in the vertical rod. The result of this is that the spring is operative as a counterbalance against the weight of the drag beams, and can also be so adjusted as to force the drag beams downward below a horizontal plane, if such action is desired in the machine.

In my opinion the respondents' machine contains the combination stated in the second claim of complainant's patent. The crank axle,

the gangs and plows, the pipe box having a rigid arm, the spring attached to this arm which lifts the plow beam, the mechanism by which a vertical bearing is given between the beam end and the pipe box, are present in both combinations. Each respective part performs the same function in substantially the same way. It is true that, for the flat spring in the patent, respondents have substituted a spiral spring, surrounding a stiff rod. These were well-known equivalents before complainant's patent. It is also true that the pivot bolt, which in complainant's patent connects the two brackets of the pipe box, and gives the vertical bearing for the head, I, of the beam end, does not appear in exactly that form in respondents' patent. Instead of this, the parts are exactly reversed. The brackets or arms in which the pivot bolt is fixed are attached to the beam ends, and the head, I, is attached to the pipe box. But the bearing operates in exactly the same way in respondents' machine, and discharges exactly the same function. The use of the spiral spring in respondents' machine is so arranged as to permit the operator to use the spring also for depressing the beam or gang plows if the pipe box arm is pushed beyond the vertical line backwards. This is an added function of the spiral spring, but does not change the character of the combination of complainant's second claim in the respondents' machine. By reason of the added function, it may be a patentable improvement on complainant's combination, but complainant's combination is still present.

Another difference between the two machines, which counsel for respondents insist upon, is the device used to fasten the stirrup in complainant's patent to the pipe box. In complainant's patent, the stirrup is held to the pipe box by means of a loop, and is made to rigidly connect therewith by means of longitudinal ribs upon the stirrup, which engage with corresponding ribs upon the pipe box. The stirrup, instead of having a loop, may be constructed in the form of a sleeve, and made to embrace the pipe box, in which case it is adjusted thereon by means of a screw bolt, whose inner end bears upon a roughened steel jib, which bites the pipe box, and prevents the sleeve from slipping. This device, by the engaging of the longitudinal ribs, serves to fix the stirrup firmly to the pipe box, and also permits a circumferential adjustment of the stirrup so as to regulate the tension of the spring. There are quite a number of these ribs in the complainant's pipe box, permitting a gradual adjustment. In the respondents' machine the pipe box has only two ribs,—one above, and one below,—which engage with corresponding depressions in the surrounding stirrup. The omission of the additional ribs in respondents' pipe box was for the reason that no variation of the tension of the spiral spring by means of the circumferential adjustment of the pipe box was possible. Such a variation of the tension of the spiral spring is accomplished by the simple and well-known expedient of a washer and a pin inserted at the lower end of the spring in one of three or four holes. To my mind, the flat spring, with the adjustment of its tension by increased longitudinal ribs on the pipe box, finds its purely mechanical equivalent in the use of the spiral spring with its adjustment by pin and washer. The same function is per-

formed in substantially the same way, only that the spiral spring pushes, while the flat spring pulls. For these reasons, the respondents' machine is an infringement of the second claim of complainant's patent.

The third claim of the patent is as follows:

"The pipe box, E, having longitudinal ribs, combined with the stirrup, G, having corresponding grooves and a clamping device, substantially as described."

The evidence does not satisfy me that there is any novelty in this particular combination. In respect to this claim, the evidence of respondents' expert seems apt and reasonable:

"The question is, is this invention, or mere selection and skill? It is quite common in machinery to have one part bolted and adjustible to another under conditions in which slipping would be very undesirable; and it has long been quite common, under such circumstances, to groove or rib the contracting surfaces to prevent such slipping. I have been personally familiar with such ribs and grooves long prior to the date of the patent in suit, both upon cylindrical surfaces and flat surfaces. And in agricultural implements the expedient is often employed. I cannot at present, without extended research, find an example of such ribs and grooves applied to circumferential surfaces, but I find in patent 183,610, in Fig. 5, the same system of ribs and grooves applied to flat surfaces bolted together. In the rotary tumblers of safe locks, the inner part of the tumbler adjusts rotarily to the outer part; and for twenty-five years, to my knowledge, the engaging surfaces, cylindrical in form, have been ribbed and grooved. Under this circumstance, I am strongly inclined to believe that the provision of Stover's pipe box and sleeves with ribs and grooves was not an invention of a novelty, but was a mere adaptation of a well-known mechanical equivalent."

The finding of the court will be that the first and third claims of complainant's patent are void, that the second claim is valid, and that respondents infringe the second claim; and the decree will be for an injunction and accounting, with the usual order of reference.